PEOPLE v. STONEMAN.

1. CRIMINAL LAW—POSSESSION OF STOLEN PROPERTY—BURGLARY—
   LARCENY—EVIDENCE.

   Possession of stolen property, standing alone, is not even prima
   facie evidence that the person in whose possession it was
   found committed burglary and, unaccompanied by other facts
   or circumstances indicating guilt, will not sustain a conviction
   for burglary (CL 1948, § 750.110).

2. SAME—BURGLARY—PRIMA FACIE CASE—EVIDENCE.

   Defendant's claim that no prima facie evidence was presented
   by the prosecution in defendant's trial for burglary *held*, with-
   out merit, where defendant and another were found in pos-
   session of a stolen safe within an hour after its theft, evidence
   clearly indicated that defendant's vehicle had been used to
   transport the safe, there was evidence that defendant had
   recently worked in the bar from which the safe was stolen,
   such work being performed in the immediate proximity of the
   safe, and defendant's testimony at trial was directly contrary
   to statements which he made to the police when arrested in
   possession of the stolen safe, establishing numerous falsifica-
   tions by defendant (CL 1948, § 750.110).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 13 Am Jur 2d, Burglary §§ 53, 54.
[2] 13 Am Jur 2d, Burglary §§ 45, 47, 48, 53, 54.
[3] 29 Am Jur 2d, Evidence § 266.
[4] 13 Am Jur 2d, Burglary §§ 45, 47, 48, 50, 53, 54; 29 Am Jur 2d,
    Evidence § 266.

3. SAME—CIRCUMSTANTIAL EVIDENCE.
   Guilt of a criminal defendant may be established by inferences drawn from circumstantial evidence.

4. SAME—CIRCUMSTANTIAL EVIDENCE—DIRECTED VERDICT—BURGLARY.
   Defendant's claim that the people failed to establish a prima facie case of burglary against him, and that he was entitled to a directed verdict of not guilty at the close of the people's proofs *held*, without merit, where (1) defendant and another were found in possession of a stolen safe at a secluded area of the city in the early hours of the morning within an hour after the burglary occurred, (2) there was evidence that defendant had, just a short time before, performed repairs at the bar from which the safe was stolen, working within a few feet from where the safe was located, (3) defendant's vehicle was shown to have been used in transporting the stolen safe, and (4) defendant, testifying on his own behalf, admitted numerous falsifications regarding the safe found in his possession, since the evidence *led to the unavoidable inference that defendant was guilty of breaking and entering the bar (CL 1948, § 750.110).

Appeal from Saginaw; Borchard (Fred J.), J. Submitted Division 3 January 4, 1967, at Grand Rapids. (Docket No. 1,853.) Decided June 13, 1967.

Herbert Stoneman was convicted of breaking and entering in the nighttime. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert B. Currie,* Prosecuting Attorney, and *Bruce J. Scorsone,* Chief Assistant Prosecuting Attorney, for the people.

*van Benschoten & van Benschoten (Maurice L. van Benschoten,* of counsel), for defendant.

BURNS, J. On March 22, 1962, a Saginaw circuit court jury found Herbert Stoneman guilty of break-

ing and entering in the nighttime.[1] At the close of the people's case defendant moved the court to direct a verdict of not guilty on the ground that there was insufficient evidence to establish a prima facie case. The motion was denied and this Court granted defendant's application for leave to file a delayed appeal. The defendant's sole claim of error is that the trial court should have granted his motion.

At approximately 3:15 a.m., November 5, 1960, Francis Matuzak, a yard conductor for the Chesapeake & Ohio Railway Company, was working at the Norman and 16th street crossing in Saginaw. He noticed a safe in the trunk of an automobile which was proceeding south on 16th street toward Astor street where it turned right. Matuzak reported these facts to his superior who, in turn, called the police at about 3:30 a.m. At that time no safe had been reported missing, but the Saginaw police officers were instructed to check the general area where the safe had been observed.

At 4:30 a.m. the police discovered the defendant and one Kenneth Majors sitting in Majors' station wagon in a fairly secluded area of town on Astor street. A rental trailer with a 760-pound safe resting partially on the trailer and partially on the ground was immediately behind the station wagon, but was not attached to the vehicle's trailer hitch.

Stoneman and Majors were taken to police headquarters where they were questioned. Defendant told the officers that around 7 p.m., November 4, 1960, he took his wife and child to Majors' house where they remained until approximately 10 p.m., at which time the 2 men went to Veremis bar in Saginaw. Stoneman said that he stayed there until his wife called at 12 midnight and requested to be taken home. According to Stoneman, he took his

---

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).

wife and child home, returned to Majors' house, parked his own car in the driveway, and drove Majors' station wagon back to Veremis bar. At closing time (2:30 a.m. or thereabouts), Stoneman stated that they went to a restaurant where they had a cup of coffee and then drove around town. Stoneman told the police that he was sleeping and when he woke up Majors told him that there was a safe at the side of the road.

When Stoneman was asked, "Did you touch the safe?", he at first replied, "No", but when the investigating officer questioned why his hands were so black and stated that "we'll probably take prints"[2] off the safe, Stoneman admitted they had tried to move the safe.

During the course of this interrogation, the police dispatched an officer to Majors' home to see if the radiator and engine of Stoneman's car (which allegedly had not been used since shortly after midnight) were warm or cold. At approximately 5:15 a.m. with a temperature hovering around 30 degrees, Stoneman's radiator and engine were both warm. Further examination of this vehicle at a later time revealed a broken trunk latch, a piece of chrome (which was found on Astor street) missing from the right rear bumper, marks on the back panel part of the trunk (these marks being the same width as the wheels on the stolen safe) and paint on the trunk similar to paint on the stolen safe.

Shortly after 6 a.m. the owner of the Las Vegas bar in Saginaw reported that sometime after 2:30 a.m. his bar had been broken into and robbed. This bar was approximately 2 miles from where the safe was found. The owner went to police headquarters and identified the safe as his. When the safe was

---

[2] No evidence of fingerprints was offered at trial, however.

opened, it was discovered that nothing had been removed.

Both Majors and defendant were charged with the crime of safe robbery. CL 1948, § 750.531 (Stat Ann 1954 Rev § 28.799). On October 31, 1960, Majors was found guilty of this charge by a jury, whereas on or about February 17, 1961, a jury acquitted the defendant. Thereupon defendant was rearrested and charged with breaking and entering in the nighttime, and receiving stolen property.[3]

The prosecution's proofs of the alleged crimes and defendant's participation in them are summarized above. Majors and Stoneman were the only witnesses presented on behalf of the defense. Their accounts of the events on the morning of the crime differed substantially from what they had told the police on previous occasions, and they both admitted that they had not told the law enforcement officers the truth. The truth of the incident, according to their testimony, was that after Stoneman had taken his wife home, he returned to his own automobile, and that after driving around looking for an after-hours place that sold whiskey, they discovered a safe on the back of a trailer on Astor street. They further testified that without discussing the merits of the situation, they loaded it into Stoneman's vehicle, but after driving 4 or 5 blocks they sobered up a little and realized that their ways were foolish. Consequently, they returned via the Norman and 16th street railroad crossing to Astor street, where they dumped the safe and headed for Majors' house. Stoneman and Majors testified that at Majors' house they discussed the evening's activities and decided to go back to the safe and see if anything was left that might incriminate them. For this purpose they allegedly used Majors' station wagon and were about

_____

[3] CLS 1961, § 750.535 (Stat Ann 1965 Cum Supp § 28.803). Defendant was found not guilty of receiving stolen property.

to examine the Astor street area when the police cruiser arrived.

Since the defendant was found guilty of breaking and entering in the nighttime, it is apparent that the jury disbelieved Stoneman's and Majors' latest accounts of what happened on November 5, 1960. But regardless of what consideration the jury gave these accounts, defendant claims that mere possession of the safe stolen from the Las Vegas bar is not prima facie evidence that Stoneman was the party who committed the crime, and therefore, the conviction should be reversed. In support of this claim he cites *People* v. *McDonald* (1910), 163 Mich 552, where on pages 555 and 556 the Court said:

"This Court is committed to the doctrine that the possession of stolen property, standing alone, is not even *prima facie* evidence that the person in whose possession it was found committed the burglary. * * * Beyond the mere fact of possession (if that be shown), there is absolutely nothing in this record connecting the respondents with the commission of the crime. * * * The unexplained possession of property recently stolen is *prima facie* evidence of larceny * * * but, unaccompanied by other facts or circumstances indicating guilt, will not sustain a conviction for burglary."

This case presents remarkable circumstances accompanying the possession. Not only was there possession of a stolen safe, but there was possession of a stolen safe which defendant would have the jury believe was apparently abandoned without its contents being taken. Defendant's "coincidental" discovery of the safe in a fairly secluded area, early in the morning, less than one hour after the Las Vegas bar had been closed, takes this case out of the "mere" possession category of *People* v. *McDonald, supra.* Perhaps the most telltale proofs

which help establish a *prima facie* case are defendant's own falsifications regarding the property found in his possession.  See *People* v. *Trine* (1910), 164 Mich 1.

*People* v. *Eaves* (1966), 4 Mich App 457, reminds us that guilt can be established by inference drawn from circumstantial evidence.  The above discussed facts and other less damning facts and circumstances properly led the jury to the unavoidable inference that defendant was guilty of breaking and entering the Las Vegas bar.

Judgment affirmed.

FITZGERALD, P. J., and QUINN, J., concurred.