PEOPLE *v.* LEE.

1. CRIMINAL LAW—TRIAL—RIGHT OF COUNSEL TO STATE THEORY OF LAW.

In prosecution for murder, it was error for court to deny to defendant's counsel right to state his theory of law to jury in his opening statement.

On right of accused in criminal case to an instruction as to the presumption of his good character, see annotation in 46 L. R. A. (N. S.) 343.

2. SAME—CROSS-EXAMINATION—GOOD-FAITH COMMENTS.

Where prosecuting attorney, in prosecution for murder, in good faith asked defendant, on cross-examination, if he didn't kill two men in Oregon, to which he received negative answer which he was unable to disprove, good faith required that he let the matter rest and refrain from commenting thereon.

3. SAME—PROSECUTING ATTORNEY REPRESENTS PUBLIC.

Prosecuting attorney represents public interests, and his duty is to secure justice.

4. SAME—UNFAIR COMMENT BY PROSECUTOR.

Where prosecuting attorney, in prosecution for murder, asked defendant, on cross-examination, if he didn't kill two men in Oregon, to which he received negative answer which he was unable to disprove, it was reversible error for him to refer thereto in his closing argument and leave impression with jury that defendant had killed two men in Oregon and that he could prove it if it were possible to subpœna witnesses from outside State, and said statement is not excused by fact that it was in reply to criticism by defendant's counsel for having injected Oregon affair into case.

5. SAME—INSTRUCTION AS TO GOOD CHARACTER—REQUESTS TO CHARGE.

Where, in prosecution for murder, defendant introduced evidence as to his reputation for being peaceable and law-abiding citizen, he was entitled to have proper request to charge in reference thereto given to jury.

6. SAME—FAILURE TO GIVE REQUESTED CHARGE—PRESUMPTION.

Failure to give request to charge properly proffered raises presumption that it was refused.

7. SAME—FAILURE TO GIVE REQUESTED CHARGE AS TO GOOD CHARACTER.

Failure of court to give proper request to charge in reference to good character is not excused by fact that court overlooked it, and said failure constituted reversible error.

Appeal from Genesee; Parker (James S.), J. Submitted April 14, 1932. (Docket No. 164, Calendar No. 36,037.) Decided June 6, 1932.

Lum Lee was convicted of murder in the second degree. Reversed, and new trial granted.

*Andrew J. Transue,* for appellant.

*Paul W. Voorhies,* Attorney General, and *Ralph M. Freeman,* Prosecuting Attorney, for the people.

McDonald, J.   The defendant has appealed from a judgment of conviction of murder in the second degree.

The deceased, James Keyes, and the defendant, Lum Lee, were partners in a restaurant business in the city of Flint, Michigan.   It is the claim of the people that, on the day of the murder, the men engaged in a quarrel in the restaurant, during which the defendant, without reasonable provocation, pulled a revolver from his pocket and shot and killed Keyes.   The defendant admitted the killing, but says it was done in self-defense.   It is his claim that Keyes had previously assaulted him with a cleaver and threatened to kill him; that he was afraid of Keyes; that when Keyes was under the influence of liquor he was ugly and violent; that on the day of the killing Keyes came into the restaurant and went into the kitchen where defendant was working; that he had been drinking; that he began to swear at defendant and call him obscene names; that he threatened to kill defendant; that he got a knife from the kitchen and struck at defendant saying, "I kill you;" that, believing his life was in danger and seeing no way of escape, he shot and killed deceased while his arm was raised for another blow with the knife. These claims shown in greater detail by the testimony formed the issue that was submitted to the jury and on which a verdict of second degree murder was rendered.   The record presents the following questions for consideration:

1.   Was it error for the court to refuse counsel for the defendant in his opening statement to the

jury the right to state his theory of the law which he believed applicable to the defense?

While this court has always conceded to a trial court a liberal discretion in the control and direction of statements and arguments of counsel to the jury, it has as strongly upheld the right of counsel to state their theory of the law as applicable to the facts which they expect to prove. In one of the earlier cases, *Fosdick* v. *Van Arsdale,* 74 Mich. 302, it is said:

"The counsel have no right to read the law to the jury or to usurp the province of the court in any way in this respect, but they have the undoubted right to state as much of the law, as they claim it to be, as may enable them to lay before the jury an intelligent idea of the force, effect and bearing of the testimony upon their case, either before or after said testimony is in the case."

A discussion of this case and others applicable to the question is found in *People* v. *Smith,* 177 Mich. 358, wherein it was held, quoting from the syllabus:

"Upon the trial of a prosecution for selling liquor to an habitual drunkard, the court committed reversible error in refusing to counsel for respondent the privilege of stating his theory of the law to the jury in opening his defense."

A more recent recognition of this right will be found in *Terrill* v. *Michigan United Traction Co.,* 214 Mich. 478, and *Jones* v. *Detroit Taxicab & Transfer Co.,* 218 Mich. 673.

In the present case it was error for the trial court to deny to the defendant's counsel the right to state his theory of the law to the jury.

2. Was it error for the prosecuting attorney, in his cross-examination of the defendant, to ask him if he had killed two men in Oregon, and, after a nega-

tive answer, to comment on it in his closing argument to the jury?

The cross-examination was as follows:

"*Q.* Didn't you kill two men in Oregon? You understand that? You don't need an interpreter. * * * Isn't that why you went to Alaska?

"*A.* No."

We have no doubt of the good faith of the prosecuting attorney in asking the question, and therefore do not hold it was error. But having received a negative answer, and being unable to disprove it, good faith required that the matter rest there. Instead of doing so he again referred to it in his closing argument in the following language:

"There has been some little argument on the part of counsel and you might call it an unjust inference about bringing in some trouble in Oregon. They say that is done for no other purpose than to prejudice the jury against this man. That is not true. They say, 'Why hasn't he followed it up and showed you just what happened at that time?' and all that sort of thing.

"Now, counsel know, and maybe some of the jurors know, and the court does know, that the prosecution cannot bring witnesses, and subpœna them here to prove crime, whether we could bring witnesses here from Oregon or not for that. The people cannot subpœna witnesses from outside of the State of Michigan to prove any fact or circumstance.

"*Mr. Roach:* I want the record to show an objection to that line of argument.

"*The Court:* It may show it."

Read in connection with the cross-examination, the language of the prosecuting attorney was a statement, or at least an insinuation, that the defendant had killed two men in Oregon and that he

could have proven it if it were possible to subpœna witnesses from outside the State of Michigan. The statement indicates that it was made in reply to criticism by defendant's counsel for having injected the Oregon affair into the case; but if so, that was not a sufficient justification for remarks so extremely prejudicial to the defendant. In many instances courts have excused prejudicial arguments when provoked by opposing counsel, but that practice can be carried too far. The prosecuting attorney represents the public interests, and his duty is to secure justice. True, he is subject to the same emotional reactions as the attorney for the accused, and should be allowed considerable latitude in replying to charges of unfairness; but there is a limit beyond which he ought not to go, and that limit is reached when defendant's rights are jeopardized. In this case the result of the argument, which was approved by the ruling of the court, must have left the jury with at least an impression that defendant killed two men in Oregon. It may have been a deciding factor in convincing them of his guilt of this crime. Because of its harmful effect on defendant's rights, the argument was prejudicial and constitutes reversible error.

3. Did the court err in refusing to submit to the jury the defendant's request to charge on the question of good character?

On the trial the defendant introduced evidence as to his reputation for being a peaceable and law-abiding citizen. A request justified by this evidence was filed with the court. It was proper in form and substance. It was not given to the jury, and was not covered in the general charge. The prosecuting attorney says that the court overlooked it, and that counsel for defendant waived it by failing to call

his.attention to that fact. The record does not show that the court overlooked it, but, if he did, that does not excuse the error. It was the court's business not to overlook a request properly proffered. From the fact that it was not given rises the presumption that it was refused. In any event it was important to the defendant, and he did not have the benefit of it. The failure to give the request was reversible error.

Other questions argued in the briefs do not require discussion. The judgment of conviction is reversed, and a new trial granted.

CLARK, C: J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.