PEOPLE v. WILLIAMS.

1. CRIMINAL LAW—REMARKS BY PROSECUTOR—VERACITY OF WITNESS —ALIBI.
   Remark, "ring around the rosy isn't it", with subsequent explanation of remark by prosecutor in trial of defendant for breaking and entering a building with intent to commit larceny, indicating that defendant and his alibi witness were switching around roles played 2 weeks before in trial of the witness where the defendant testified to an essentially similar alibi for him *held*, not to be prejudicial, and not to deny defendant a fair trial (CL 1948, § 750.110, as amended by PA 1964, No 133).

2. SAME—REMARKS BY PROSECUTOR—PREJUDICE.
   Statements by prosecutor in presence of jury should not be held to be prejudicial if they were made in good faith and, when fairly construed, do not appear to have been such as influenced the jury adversely to the rights of the accused.

3. SAME—ALIBI—NOTICE—DISCRETION OF COURT.
   A trial court may refuse to receive evidence of alibi where the accused fails to give prosecution notice of alibi at least 4 days before trial; the statutory notice is required for the benefit and protection of the public, and trial court did not abuse its discretion in refusing to admit alibi testimony where no notice was given (CL 1948, §§ 768.20, 768.21).

4. SAME—CIRCUMSTANTIAL EVIDENCE.
   Guilt of a criminal defendant may be established by inferences from circumstantial evidence.

---

REFERENCES FOR POINTS IN HEADNOTES
[1-2, 7] 42 Am Jur, Prosecuting Attorneys § 20; 53 Am Jur, Trial § 459.
[3] 21 Am Jur 2d, Criminal Law § 137.
[4] 30 Am Jur 2d, Evidence §§ 1091, 1125.
[5] 13 Am Jur 2d, Burglary §§ 45, 50, 53, 54, 61.
[6] 5 Am Jur 2d, Appeal and Error §§ 838, 883.

5. SAME—BREAKING AND ENTERING—STOLEN PROPERTY—POSSESSION
—SUFFICIENCY OF EVIDENCE.

Sufficient facts were presented for jury to find defendant guilty
of breaking and entering a shop building with intent to commit
a larceny, where evidence presented established that defendant
had physical possession of stolen mechanics' hand tools, de-
fendant's account of when and how he obtained the possession
of tools from a man whose first name and address he did not
know was directly contradicted by testimony of owner of stolen
property, 2 witnesses testified that defendant told them he
would have an electric hoist for sale in a few days and owner
of tools testified that upon the discovery of breaking and
entering he noticed that a ladder had been moved to a place
under his electric hoist (CL 1948, § 750.110, as amended by
PA 1964, No 133).

6. SAME—VERDICT—EVIDENCE—CREDIBILITY.

A jury's verdict in a criminal case must stand if proof of the
elements of the crime alleged was presented to it, as the jury
viewed the witnesses, heard all the testimony, and was in a
superior position to determine their credibility.

7. SAME—CLOSING ARGUMENT—MISSTATEMENT.

Misstatement by prosecutor in closing argument that alibi wit-
ness testified that he was out of own on the day he claimed to
be a witness to a transaction between defendant and an un-
identified man when in fact a police witness gave the testimony
that the alibi witness had told the police witness, in connection
with another investigation, that he was out of town that day,
considered in its context, did not mislead the jury and is not
ground for reversal.

Appeal from Kent, Vander Wal (John H.), J.
Submitted Division 3 November 7, 1967, at Grand
Rapids. (Docket No. 2,410.) Decided April 3, 1968.
Leave to appeal granted September 30, 1968. See
381 Mich 780.

Ulyssese Williams was convicted of breaking and
entering a building with intent to commit larceny.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Reynolds A. Brander, Jr.,* Assistant Prosecuting Attorney, for the people.

*Warner, Norcross & Judd (Charles C. Lundstrom,* of counsel), for defendant.

LESINSKI, C. J. Defendant was found guilty by a jury of the crime of breaking and entering a shop building with the intent to commit a larceny.[1]

The shop of the Norder Excavating Company in Wyoming, Michigan, was forcibly entered through a rear door between 12 o'clock noon on Sunday, January 9, 1966, and 7 o'clock the following morning. The thief took several mechanics' hand tools from the shop.

On the morning of January 10, 1966, the defendant offered to sell the tools stolen from the Norder Company to the owner of a motor rebuilding shop in Wyoming, Michigan. Later the same morning, defendant sold these tools to another local concern, receiving a $30 check in payment. Norder, the owner, identified the tools sold by the defendant as those stolen from his shop. Norder testified that, to the best of his knowledge, these tools were in his shop when he left on Sunday, January 9, 1966.

It was through the chance reading of a newspaper article describing the breaking and entering that the purchaser of the tools realized he had received stolen property. The purchaser's description led to the apprehension and arrest of defendant.

The defendant's claim is that he obtained the stolen goods from a Mr. Fraser on January 7, 1966, the Friday preceding the breaking and entering.

---

[1] CL 1948, § 750.110, as amended by PA 1964, No 133 (Stat Ann 1968 Cum Supp § 28.305).

According to defendant, he had been selling tools for Mr. Fraser on a commission basis since December, 1965.

Defendant told the police that he knew neither Fraser's first name nor his street address. He would meet Fraser either in a bar or on a street corner or parking lot to transact business. Defendant described Fraser to the police as a light-skinned Negro about 5'7" tall, stockily built, with reddish hair; however, Tommy Joe Nelson, a witness for defendant, testified that Fraser was a Negro, 6' tall, possibly an albino, having "funny colored eyes and blond hair."

Tommy Joe Nelson testified that he witnessed the transaction that allegedly took place between Fraser and the defendant on January 7, 1966. But Officer Cline of the Wyoming police department testified that Nelson had told him, in connection with another investigation, that he had left Grand Rapids for Chicago on January 2, 1966, and had not returned until February 23.

The defendant makes four assignments of error. First, the defendant contends that a remark of the prosecutor prevented him from having a fair trial.

The prosecuting attorney, attacking the credibility of the defendant's witness Nelson, elicited from Nelson that he had been previously tried for breaking and entering with intent to commit larceny. At that trial, the defendant in the case at bar testified in Nelson's behalf that he, Williams, had witnessed a transaction in which Nelson had received the stolen goods from a third party. The prosecuting attorney remarked at this point: "Ring around the rosy, isn't it?" Counsel for the defendant objected and the objection was sustained by the trial judge.

During his closing remarks, the prosecuting attorney again used the phrase:

"Two weeks ago it is Tommy Joe Nelson  *  *  *
who is on trial for breaking and entering and steal-
ing shotguns and it is Ulyssese Williams who sud-
denly appears as his witness, that Tommy Joe
Nelson didn't steal those shotguns. He also bought
them from some third party and I [referring to
Ulyssese Williams] was there when it happened.
That is what I mean by ring around a rosy, they are
switching around."

Upon a reading of the remarks in context, we do not
find that they deprived the defendant of a fair trial.

In *People* v. *Burnstein* (1933), 261 Mich 534, 538,
the Supreme Court stated:

"Great care should be taken by prosecuting officers
and trial courts that no statement be made in the
presence of jurors which would jeopardize a defend-
ant's right to a fair trial. But in the haste and heat
of a trial it is humanly impossible to obtain absolute
perfection, and of necessity some allowance must be
made in determining whether impromptu remarks
are to be held prejudicial. Statements should not
be held prejudicial if they are made in good faith,
and, when fairly construed, they do not appear to
have been such as influenced the jury adversely to
the rights of the accused."

*Burnstein, supra,* is quoted with approval in *Peo-
ple* v. *Logie* (1948), 321. Mich 303, and *People* v.
*Hoffman* (1965), 1 Mich App 557. The latter two
cases again state that the test to be applied is not
whether there were some irregularities but instead
did the defendant have a fair and impartial trial.

Defendant cites the following cases as authority
in support of his position: *People* v. *Holmes* (1940),
292 Mich 212; *People* v. *Jones* (1940), 293 Mich 409;
and *People* v. *Lee* (1932), 258 Mich 618. In each
of these cases the prosecution made far stronger
intimations that the defendants had committed pre-

vious unproven crimes, thereby preventing a fair trial.

The second assignment of error concerns the refusal of the trial judge to allow the testimony of an alibi witness when defendant failed to give the notice required by statute.[2]

"Under our code of criminal procedure, when an accused wishes to set up an alibi as a defense he must give the prosecution notice of such defense at least 4 days prior to trial. * * * If an accused fails to give the notice required by the statute the trial court may refuse to receive evidence of alibi." *People* v. *Longaria* (1952), 333 Mich 696, 698.

The statutory requirement that defendants in criminal cases not cognizable by a justice of the peace give notice of the defense of alibi was enacted for the benefit and protection of the public. *People* v. *McFadden* (1956), 347 Mich 357. See, also, *People* v. *George Johnson* (1966), 5 Mich App 257. The refusal of the trial court to admit the testimony of the proffered alibi witness did not constitute an abuse of discretion[3] under the circumstances.

In the third assignment of error, defendant contends that the evidence produced against him cannot sustain a finding of guilt beyond a reasonable doubt. He points out that there is no direct evidence linking him with the breaking and entering.

Inferences drawn from circumstantial evidence can be sufficient to sustain a conviction. *People* v. *Stoneman* (1967), 7 Mich App 65, *People* v. *Eaves* (1966), 4 Mich App 457. This Court said, in *People* v. *Eaves,* at page 466:

"The defendant's question as to the weight of the evidence is answered in *People* v. *Spann* (1966),

---

[2] CL 1948, § 768.20 (Stat Ann 1954 Rev § 28.1043).
[3] CL 1948, § 768.21 (Stat Ann 1954 Rev § 28.1044).

3 Mich App 444, 456, 457, where this Court re-affirmed prior Michigan case law that circumstantial evidence can support conviction."

The record made in the court below provides much more evidence than merely the defendant's physical possession of stolen property. The defendant's account of how he obtained possession of the tools from the unidentified Mr. Fraser on January 7 is directly contradicted by the testimony of Mr. Norder that these very tools were in his shop on January 9. Further, there is the matter of the varying descriptions of Fraser given by the defendant and his own witness.

There is also the testimony of two witnesses that the defendant told them, on January 10, that in a few days he would have an electric hoist for sale. Mr. Norder testified that, when he first discovered the breaking and entering, he noticed that a ladder had been moved about 25 feet to a position under his electric hoist.

" 'In reviewing a jury determination in a criminal appeal, this Court must tread lightly, as the jury viewed the witnesses, heard all the testimony, and was in a superior position to determine the credibility of all that passed before it.' " *People* v. *Eaves, supra,* p 466, quoting from the *Spann Case,* p 451.

It cannot be said that the circumstances set forth in the record were not sufficient to convince the jury beyond a reasonable doubt.

The last assignment of error asserts that reversible error was committed when the prosecuting attorney stated in his closing argument that the defendant's witness, Tommy Joe Nelson, testified that he had been out of Grand Rapids on the day he claimed to have witnessed the alleged transaction between the defendant and Mr. Fraser. In fact, the witness did not so testify; rather it was a police

witness who gave that testimony, testimony that would have been objectionable as hearsay except for the manner in which it was used and the court-room presence of Nelson who could have contradicted the testimony had it been erroneous.

We cannot conclude that the prosecutor's misstatement, considered in its context, misled the jury in any way.

Affirmed.

BURNS and HOLBROOK, JJ., concurred.