PEOPLE v CHRISTENSEN

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTORS—WITNESSES—IMPROPER SUGGESTION —TESTIMONIAL QUESTIONING.

A suggestion by the prosecutor to a witness in a murder trial that initials written by the defendant represented a confession of guilt was clearly improper where there was no evidence on the record which would have supported the prosecutor's interpretation of the ambiguous initials, the prosecutor compounded the error by bringing the subject before the jury twice again, and he wrote the initials on the blackboard in the courtroom; additionally, the prosecutor's interpretation of the initials was improper as testimonial questioning.

2. CRIMINAL LAW—WITNESSES—IMPEACHMENT—DEFENDANT'S ACTIVITIES.

Cross-examination of a defense witness concerning a defendant's drug-related activities was proper impeachment evidence in a trial for murder where the direct examination of the witness left a favorable impression of the defendant's character and the cross-examination showed that the witness had little knowledge of the defendant's private activities.

3. CRIMINAL LAW—PROSECUTORS—WITNESSES—CREDIBILITY—IMPROPER INSINUATION.

A prosecutor's insinuation that a defense witness had refused to answer a question about the identity of drug pushers because he was one himself is an improper attack on the credibility of

REFERENCES FOR POINTS IN HEADNOTES
[1, 7] 75 Am Jur 2d, Trial §§ 193, 194.
[2] 58 Am Jur Witnesses § 705.
   75 Am Jur 2d, Trial § 862.
[3] 75 Am Jur 2d, Trial § 305 *et seq.*
[4] 75 Am Jur 2d, Trial § 122.
[5–7, 9] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
   75 Am Jur 2d, Trial § 708.
[8] 76 Am Jur 2d, Trial § 1052.

the witness where no evidence was produced from which the prosecutor could infer that the witness was a pusher.

4. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTOR'S REMARKS—OB-
JECTIONS—COURTS—CURATIVE INSTRUCTIONS.

Failure to seek curative instructions to eliminate any prejudice from a prosecutor's improper remarks did not preclude appellate review where objections raised at trial were sufficient to inform the court of the prosecutor's improper insinuations and the court should have given appropriate curative instructions without request.

5. APPEAL AND ERROR—CRIMINAL LAW—HARMLESS ERROR.

Two inquiries are pertinent where it is claimed that error is harmless: first, whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless; second, if not so basic, whether the appellate court can declare a belief that the error was harmless beyond a reasonable doubt.

6. APPEAL AND ERROR—CRIMINAL LAW—HARMLESS ERROR—REASONA-
BLE DOUBT—JURY.

Error is not harmless and a defendant must be retried if it is reasonably possible that in a trial free of the errors complained of even one juror might have voted to acquit the defendant; a conviction must stand if the proof was so overwhelming, aside from the taint of error, that all reasonable jurors would find guilt beyond a reasonable doubt.

7. CRIMINAL LAW—PROSECUTORS—IMPROPER SUGGESTIONS—APPEAL
AND ERROR—HARMLESS ERROR—OVERWHELMING EVIDENCE.

Improper suggestions by the prosecutor constituted harmless error and there was no reasonable possibility that the improper suggestions contributed to the defendant's conviction where the evidence of guilt was overwhelming, the defendant had admitted the murder to six witnesses, and he had related the killing in explicit detail which corresponded to the physical evidence produced at trial.

8. CRIMINAL LAW—INSTRUCTIONS TO JURY—INSANITY—COURTS—JURIS-
DICTION.

A trial judge may tell the jury that the court will lose jurisdiction over the defendant once the defendant is found insane; no error resulted from instructing the jury that if the defendant were found insane, he would be committed to the Michigan Department of Mental Health, from which he could be released when cured without coming back to the trial court for evaluation.

DISSENT BY N. J. KAUFMAN, J.

9. CRIMINAL LAW—PROSECUTOR'S REMARKS—HARMLESS ERROR—CONFESSIONS—OBJECTIONS.

   *Permitting deliberate injection by the prosecutor of prejudicial material, intended by him to represent a confession of guilt by the defendant in a murder trial, is error which is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless error; the prosecutor's remarks were objectionable for numerous reasons and defense counsel was only required to give one of the reasons when voicing an objection.*

Appeal from Montcalm, Leo B. Bebeau, J. Submitted June 5, 1975, at Grand Rapids. (Docket No. 21566.) Decided August 27, 1975. Leave to appeal applied for.

Timothy L. Christensen was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Duane A. Carr,* Prosecuting Attorney, for the people.

*Robert D. Edsall,* for defendant.

Before: McGREGOR, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

McGREGOR, P. J. The defendant was convicted by a jury of first-degree murder, MCLA 750.316; MSA 28.548, and was sentenced to life imprisonment. He now appeals as of right, raising eight issues for our consideration.

I.

Three of the issues raised by the defendant relate to the conduct and remarks of the prosecutor during the trial and during his closing argument. The defendant contends that these alleged

instances of prosecutorial misconduct were so prejudicial as to deny him his right to a fair trial. Because similar issues have been raised in each instance, we will consider them together in our analysis.

## A.

The first instance of alleged misconduct began during the direct examination of one Judith Cowles in regard to people's exhibit number 5, a notebook of poetry which the defendant had written. This notebook contained the entry: E. O. A. N. O. 11-24-73. The following colloquy occurred between the prosecutor and this witness:

"*Q.* What does E. O. A. N. O. November 24th, 1973 mean to you?

"*A.* What was that?

"*Q.* E. O. A. N. O. November 24, '73. Do you recognize that?

"*A.* No.

"*Q.* Did you ever discuss that entry with anyone?

"*A.* No. I never heard of it.

"*Q.* It carries no meaning to you?

"*A.* No.

"*Q.* Christensen never told you what it meant?

"*A.* No. * * *

"*Q.* I ask you again to look at that entry on that page that says those symbols.

"*A.* Well, it doesn't mean anything to me.

"*Q.* You never discussed that with the defendant?

"*A.* No.

"*Q.* You never discussed it to mean, maybe: End of another narcotics officer?

"*Mr. Edsall:* I object, your Honor. She's answered his question.

"*A.* I didn't know what it meant.

"*The Court:* Just a minute, what did you say then?

"*A.* I said I have no idea what it would mean. I never saw it before."

Later, upon examination of one Dr. Rosenzweig, the subject was again broached:

"*Q.* You didn't testify to this, and I wondered. We introduced an exhibit here in the course of the trial, and it's purported to be a notebook the defendant carried himself. Did you have benefit of examining that?

"*A.* I never saw it. I heard he'd written poetry, but I never saw any of it.

"*Q.* Now, would you have any opinion with his ego-bolstering facets and other things taken into consideration as to whether or not he might make a written entry of things that bolstered his ego?                ʼ

"*A.* Oh yes, he might very well.

"*Q.* So, one place in this book that's been offered at this time is an entry on the page which bears just a few symbols, and they are specifically E-O-A-N-O, 11/24/73, and the date is charged to have been the date of the offense in this case. And I had the temerity to suggest that it might mean—

"*Mr. Edsall:* Objection, your Honor.

"*Court:* I don't think what temerity you have—it's merely a suggestion that you made as to what that might mean. You can ask this witness if he knows what it means.

"*Mr. Carr:* I'll strike the word temerity then. I suggested that—

"*Court:* I don't think you can make the suggestion as to what you think it means.

"*Mr. Carr:* We're examining an expert witness here.

"*Court:* That's right.

"*Mr. Carr:* And the term has—the jury won't learn anything that hasn't been already heard because they've heard—

"*Court:* Well, they'll hear it again."

Finally, during summation, the prosecutor stated:

"About this book, ladies and gentlemen, exhibit 5. I invite you to look after the typewritten entries in there, a page or two later, for some symbols, namely, EOANO 11-24-73, and I invite you to look through that entire book and see if you find any other place where a date is entered in that book. I invite you to do that, ladies and gentlemen. I challenge you to do that, and I suggest that you will not find a date anywhere else in this book save the date, November 24th, '73, EOANO—what does it mean?—I leave it to you."

The suggestion by the prosecutor to Judith Cowles was clearly improper as there was no evidence on the record which would have supported the prosecutor's interpretation of the ambiguous initials in the defendant's notebook. The prosecutor then compounded his error by bringing the subject of the meaning of the initials before the jury twice again, and additionally, by writing the initials on the blackboard in the courtroom. The error evident in the foregoing is two-fold. First, the jury may believe that the interpretation comes from facts of which the prosecutor has knowledge but which he cannot divulge, and second, the jury might afford undue weight to this interpretation from its natural respect for the office of the prosecutor.

In *Berger v United States,* 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935), the Supreme Court stated:

"It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or

lesser degree, has confidence that these obligations
which so plainly rest upon the prosecuting attorney,
will be faithfully observed. *Consequently, improper sug-
gestions, insinuations, and, especially, assertions of per-
sonal knowledge are apt to carry much weight against
the accused when they should properly carry none.*"
(Emphasis added.)

See *People v Askar,* 8 Mich App 95; 153 NW2d 888
(1967), *People v Brocato,* 17 Mich App 277; 169
NW2d 483 (1969).

Additionally, the prosecutor's interpretation of
the initials could be construed as testimonial ques-
tioning and, therefore, improper. See *Brocato, su-
pra, People v Besonen,* 4 Mich App 131; 144 NW2d
653 (1966).

### B.

The second instance of alleged prosecutorial mis-
conduct occurred during the prosecutor's cross-ex-
amination of one Mr. Kirk, who was the Dean of
Students at Macomb Community College, where
the defendant was enrolled. The cross-examination
of Mr. Kirk explored the drug use at a noncollege
facility and other specific acts which defendant
was reported by other witnesses to have per-
formed.

Although Mr. Kirk had no knowledge of these
matters, the effect of the cross-examination was to
bring these acts of the defendant to the jury's
attention for a second time. However, we do not
believe that this was error under the circum-
stances. The direct examination of Mr. Kirk had
left the impression with the jury that the defend-
ant was not a problem student at the college and
had been doing passing work there. The prosecu-
tor's cross-examination showed that Mr. Kirk had

little or no knowledge of the defendant's private activities and, to this extent, the cross-examination was proper impeachment evidence. Further, no objection was made to this line of questioning.

## C.

The third instance of alleged misconduct occurred during the cross-examination of defense witness Craig Asiala, after this witness had stated that he was acquainted with a couple of drug pushers at Macomb Community College and that, if defendant had been selling drugs, he would have known about it.

The cross-examination went as follows:

"*Q.* Can you give us a name or two of some of your well-known pushers?

"*A.* I'm sorry but I'm going to have to refuse to answer that question.

"*Q.* Why's that?

"*A.* Just can't do it.

"*Q.* Why can't you do it? The Court will tell you when you don't have to answer a question. Answer the question.

"*A.* It might incriminate myself.

"*Court:* How is it going to incriminate yourself, just the name of the pusher?

"*Mr. Carr:* He's the pusher probably. No further questions.

"*Court:* That's all.

"*Mr. Edsall:* I think that remark was uncalled for on the part of the prosecutor.

"*Mr. Carr:* I apologize, and I'll withdraw that remark."

Here again, the prosecutor was in error. There was no evidence produced during this trial from

which the prosecutor could infer that this witness was a pusher. His insinuation, although it did not reflect directly on defendant's innocence or guilt, did, however, constitute an improper attack on the credibility of this defense witness. This Court's remarks, earlier, in relation to the prosecutor's interpretation of the initials, is likewise appropriate here.

Having found error, the first question to be answered is whether or not such error is properly before us.

In regard to the prosecutor's remarks concerning the initials, it must be noted that defense counsel objected to the question addressed to Miss Cowles on the ground that the question had been asked and answered and not on the ground that the prosecutor's remark was an improper suggestion. Additionally, the objection to the question addressed to Dr. Rosenzweig was sustained and there was no objection to the remarks made in closing argument. Furthermore, at no time did defense counsel seek curative instructions from the court or move for a mistrial in regard to any of these errors.

While we could hold that we are precluded from considering these matters since defense counsel did not seek curative instructions which would have eliminated any prejudice arising from these remarks,[1] we do not think that this is a proper case for the application of that rule.

Under the facts and circumstances of this case, we think that the objections raised below were sufficient to inform the trial court of the prosecutor's errors and that the trial court should have, without request, given appropriate curative in-

---

[1] *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970), *People v Majette,* 39 Mich App 35; 197 NW2d 78 (1972).

structions. To the extent that the trial court failed to do so it was also in error.

. As these errors are properly before us, we now must consider whether they are sufficient to warrant the reversal of defendant's conviction.

The test to be used in this regard has been variously stated. It has been stated that the remarks of a prosecutor must be so prejudicial as to cause the jury to suspend its own power of judgment in receiving the evidence before it,[2] that the test to be applied is whether the defendant had a fair and impartial trial,[3] or that it must affirmatively appear that the error complained of has resulted in a miscarriage of justice.[4]

We believe that all these tests are but different articulations of the harmless error doctrine. The appropriate considerations of this test are described in *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972):

" 'Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?' " 386 Mich at 563.

The first step in determining whether an error is harmless is thus to ascertain whether it is unduly "offensive to the maintenance of a sound judicial process". This criterion is separate and

---

[2] *People v Turner,* 41 Mich App 744; 201 NW2d 115 (1972), *People v Gray,* 45 Mich App 643; 207 NW2d 161 (1973).

[3] *People v Williams,* 11 Mich App 62; 160 NW2d 599 (1968).

[4] MCLA 769.26; MSA 28.1096, *People v Green,* 7 Mich App 346; 151 NW2d 834 (1967).

distinct from the criterion of "harmless beyond a reasonable doubt". Its purpose is to deter prosecutorial misconduct and to safeguard those individual rights which are so fundamental that the impact of their violation cannot be fully assessed. Thus, the nature or amount of evidence produced against a defendant at trial is irrelevant to the application of this criterion. Although an error may be intolerably offensive if it is deliberately injected into the proceedings by the prosecutor,[5] we do not find, however, that the improper suggestions and insinuations in this case fall into this first category. These errors did not constitute such an affront to the integrity of the trial process that reversal is required upon these grounds.

In order to hold that the error in this case does not require reversal, however, we must also be able to say that it was "harmless beyond a reasonable doubt". If it is reasonably possible that in a trial free of the errors complained of, even one juror might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried. If, on the other hand, the proof was so overwhelming, aside from the taint of error, that all reasonable jurors would find guilt beyond a reasonable doubt, then the conviction must stand. After a careful review of the evidence presented to the jury in this case, we can find no reasonable possibility that the improper suggestions by the prosecutor contributed to the defendant's conviction, as the evidence of guilt was overwhelming. In this regard, it is important to note that the defendant admitted the murder to no less than six different witnesses in various degrees of detail. He related the killing to two of these wit-

---

[5] *See People v Robinson, supra, People v Bigge,* 288 Mich 417; 285 NW 5 (1939).

nesses in explicit detail which corresponded to the physical evidence produced at the trial.

Although finding these errors harmless, we wish to emphasize that we do not condone the conduct of the prosecutor in this case. Had the prosecutor's misconduct been a little more flagrant here, we would have had no problem in holding that the misconduct was "offensive to the maintenance of a sound judicial process". Similarly, if the evidence against the defendant had been less overwhelming, we would have been unable to say that these errors were "harmless beyond a reasonable doubt". The prosecutor who makes improper suggestions or insinuations to the jury, therefore, risks the loss of an otherwise perfectly good case for no reason.

## II.

The trial court instructed the jury that, if the defendant were found insane, he would be committed to the Michigan Department of Mental Health, from which he could be released when cured and that "He does not come back to the court for * * * evaluation". The defendant contends that this was a violation of the rule announced in *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), because it suggested that the defendant *should* be returned to the court before being released from confinement.

Since *Cole,* this Court has twice considered similar jury instructions which tell the jury that if a defendant is found insane, he will be committed to the Department of Mental Health and that the court will have no further dealings with him.

In *People v Widgren,* 53 Mich App 375; 220 NW2d 130 (1974), the court informed the jury:

"I further charge you, however, it is also the law that whether or not such a person has recovered his insanity

(sic) can be questioned at any time by Writ of Habeas Corpus. Upon testimony by psychiatrists in open court that the defendant is then sane, such a finding can be entered by the court and the defendant released forthwith." *Widgren, supra,* p 379.

In *People v Wright,* 58 Mich App 735; 228 NW2d 807 (1975), the trial court instructed the jury:

"I will tell you, however, that if you reach a verdict in this case of not guilty by reason of insanity, if you find that verdict, then I will inform you that this does not mean that the accused will go free. It means that I have no further control over him as judge of this court."

The instructions in these two cases conveyed basically the same information to the jury as the instruction in the instant case, and both were affirmed on appeal. The result of these cases is that the trial judge may tell the jury that he will lose jurisdiction over the defendant once the defendant is found insane. We hold that these cases are controlling of the instant case and that, as a result, the trial court did not commit error in so instructing the jury.

We have carefully reviewed the briefs and record pertaining to defendant's other assignments of error. They reveal no error which would justify the reversal of defendant's conviction.

Affirmed.

D. E. HOLBROOK, J., concurred.

N. J. KAUFMAN, J. *(dissenting).* I dissent. I cannot countenance the deliberate injection by the prosecutor of so obviously prejudicial material, and I feel that this Court cannot condone such actions by deeming them harmless error. See *e.g. People v*

*Dunn,* 46 Mich App 226, 231; 208 NW2d 239 (1973). The error is not, under the first test of *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), harmless. I find the error to be "so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless". *Id.* at 563. I cannot see how the fact that defendant objected to the prosecutor's initial, nonresponsive "explanation" of "E. O. A. N. O. 11-24-73" by claiming that the question had been "asked and answered", rather than by citing its prejudicial effect, could diminish the offensiveness of the question. The prosecutor's remarks were objectionable for numerous reasons. Counsel for defendant need only have given one, and he did so.

Having been warned by the court, the prosecutor continued to influence the jury by injecting what was intended by him to represent a confession of guilt by defendant. No reasonable man could doubt the effect of such material on a jury.

I find applicable to the prosecutor's statements a description voiced years ago by the Supreme Court and reiterated in *People v Robinson, supra,* at 563–564:

"The statement[s were] inexcusable, wholly without warrant of law, planted irremovable impression, and rendered defendant a victim of the error. The prosecutor by such statement[s] of intended proof of defendant's guilt brought an effect so probable, so inadmissible, and so prejudicial as to constitute irreparable error." *People v Bigge,* 288 Mich 417, 421; 285 NW 5 (1939).

I would reverse and remand for new trial.