# Order

Michigan Supreme Court
Lansing, Michigan

June 11, 2010

138161

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

ANTHONY MARION REDD,
        Defendant-Appellant.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 138161
COA: 283934
Oakland CC: 2007-215277-FH

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of May 29, 2009. The application for leave to appeal the December 4, 2008 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the question presented should be reviewed by this Court.

MARKMAN, J. (*concurring*).

I concur in the Court's order denying leave to appeal. I write separately only to offer some context and perspective concerning the meaning and continued significance of *People v Bigge,* 288 Mich 417 (1939). Specifically, it is necessary to emphasize that: (1) *Bigge*'s rule is evidentiary in nature as it concerns the admissibility of tacit admissions under MRE 801(d)(2)(B); and (2) every so-called *Bigge* error does not require automatic reversal. Accordingly, contrary to Chief Justice KELLY's assertion, a *Bigge* error can be waived by a criminal defendant.

In *Bigge,* the prosecutor in his opening statement made reference to the defendant's silence in the face of an incriminatory accusation made in his presence. This Court ruled that the defendant's failure to deny the accusation could not be used as substantive evidence of guilt, explaining:

> There can be no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of a defendant. Defendant, if he heard the

statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his guilt. [*Bigge,* 288 Mich at 420.]

*Bigge*, grounding its determination in the "right of due process," found that this error required reversal, stating that it was "so prejudicial as to constitute irreparable error." *Id.* at 421.

Since *Bigge,* this Court has had several occasions on which to reexamine this rule. In *People v McReavy,* 436 Mich 197, 213 (1990), we clarified that *Bigge*'s exclusionary rule is evidentiary in nature, and equated it with MRE 801(d)(2)(B), which states: "A statement is not hearsay if . . . the statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." *McReavy* further explained that *Bigge* precludes admissibility of a defendant's failure to say anything in the face of an accusation as an adoptive or tacit admission under MRE 801(d)(2)(B) unless the defendant 'manifested his adoption or belief in its truth . . . .'" *Id*. We reiterated this understanding in *People v Hackett*, 460 Mich 202, 213 (1999), in which we noted that "[a]lthough *Bigge* preceded the enactment of the Michigan Rules of Evidence, the rule of *Bigge*, like MRE 801(d)(2)(B), concerns tacit admissions."

I take this opportunity to again clarify that *Bigge*'s rule is evidentiary and that "use of a party opponent's statements and conduct are to be evaluated pursuant to MRE 801." *McReavy,* 436 Mich at 222. For although *Bigge* concluded that the error before it was of constitutional proportion, significant developments in Michigan's legal landscape in subsequent years have undermined that conclusion. These developments include the enactment of the Rules of Evidence[1] and significant changes to Fifth and Fourteenth Amendment jurisprudence occasioned by decisions of the United States Supreme Court.

Not least among the decisions that have altered our understanding of the constitutional implications of a defendant's silence is *Miranda v Arizona,* 384 US 436 (1966). Despite the fact that *Bigge* predated *Miranda* by 27 years, this Court in *People v Bobo,* 390 Mich 355, 359-361 (1973), associated *Bigge*'s rule with the Fifth Amendment privilege against compelled self-incrimination protected in *Miranda* to support its holding that a criminal defendant's silence could never be used against him under any circumstances during a trial, regardless of whether the evidence was used substantively or

---

[1] "The fact that the *Bigge* decision predates the adoption of th[e] Rule[s] of Evidence is of no consequence to challenges to the admissibility of tacit admissions." *McReavy,* 436 Mich at 213 n 15. As *McReavy* recognized, *Bigge* does not alter or augment an analysis of a party admission under the MRE 801(d)(2)(B) because after the enactment of the Rules of Evidence, *Bigge*'s rule against tacit admissions is essentially coextensive with that evidentiary rule.

for impeachment, or whether the silence was prior to or at the time of arrest.  However, the United States Supreme Court declined to extend such broad protections.  Instead, that Court held that the Due Process Clause of the Fourteenth Amendment is violated when a defendant's silence, *at the time of arrest* and *after* receiving *Miranda* warnings, is used for impeachment purposes, *Doyle v Ohio,* 426 US 610, 619 (1976), and that the Fifth and Fourteenth Amendments are not violated when a defendant's pre-arrest, pre-*Miranda* silence is used for impeachment.  *Jenkins v Anderson,* 447 US 231, 240 (1980).  The Supreme Court left the admissibility of such evidence to be determined by evidentiary laws of the states.  *Id.*  This Court has subsequently construed Michigan's constitutional protections as "coextensive with the Fifth Amendment of the United States Constitution and the due process analysis of *Doyle v Ohio*."  *People v Cetlinski,* 435 Mich 742, 759 (1990).

Thus, both the United States Supreme Court and this Court have made clear that there are no constitutional bars to using a defendant's pre-arrest, pre-*Miranda* silence— the precise type of silence at issue in *Bigge*—for impeachment.  While neither of these Courts has addressed the substantive use of defendant's silence in such circumstances, our Court of Appeals, as well as several federal circuits, have likewise found no constitutional barriers to the admission of such evidence for this purpose.  See *People v Schollaert*, 194 Mich App 158, 166-167 (1992); *People v Solmonson*, 261 Mich App 657, 665 (2004); *United States v Love*, 767 F2d 1052, 1063 (CA 4, 1985); *United States v Oplinger*, 150 F3d 1061, 1066 (CA 9, 1998), overruled on other grounds in *United States v Contreras*, 593 F3d 1135 (CA 9, 2010).  In *Solmonson*, our Court of Appeals explained:

> [W]here a defendant has received no *Miranda* warnings, no constitutional difficulties arise from using the defendant's silence before or after his arrest as substantive evidence unless there is reason to conclude that his silence was attributable to the invocation of the defendant's Fifth Amendment privilege. [*Solmonson*, 261 Mich App at 665.]

In my view, *Solmonson* sets forth a correct statement of the law regarding the constitutional implications of the substantive use of a defendant's silence in a pre-arrest, non-custodial interview.  Because of the absence of governmental coercion or compulsion to speak in this non-custodial, pre-*Miranda* setting, the Fifth Amendment is simply inapplicable.  As Justice STEVENS explained in his concurrence in *Jenkins*:

> When a citizen is under no official compulsion whatever, either to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment.  For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. A different view

ignores the clear words of the Fifth Amendment. [*Jenkins*, 447 US at 243-244.]

In view of these developments, *Bigge*'s constitutional foundations as to the admissibility of tacit admissions in a pre-arrest, non-custodial context have been severely eroded. Rather, the admissibility of such testimony is to be evaluated under MRE 801(d)(2)(B). See *McReavy,* 436 Mich at 222; *Hackett,* 460 Mich at 213. "[A]n evidentiary approach to the use of a defendant's pre-arrest, pre-*Miranda* statements, including omissions, will adequately protect the policy interest in foreclosing the factfinder from unfair inferences of guilt." *Cetlinski*, 435 Mich at 759.

This understanding of a *Bigge* error leads to my second point of clarification. Although *Bigge* found that the error before it was "so prejudicial as to constitute irreparable error," when *Bigge* is properly understood as concerning a violation of MRE 801(d)(2)(B), it is clear that not every *Bigge* violation amounts to an "irreparable error" if this is interpreted as requiring automatic reversal. The reversal of a conviction entails substantial social costs and, thus, rules of automatic reversal are disfavored. *People v Mosko*, 441 Mich 496, 502 (1992); *People v France*, 436 Mich 138, 161 (1990). This Court has explained that such "structural errors" are "intrinsically harmful" and "necessarily render[] unfair and unreliable the determining of guilt or innocence." *People v Duncan*, 462 Mich 47, 51 (2000) (holding that the complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecutor has proven the charge beyond a reasonable doubt constituted structural error requiring automatic reversal).

Against this backdrop, *Bigge*'s "irreparable error" language is extraordinary. Indeed, in the history of Michigan's criminal jurisprudence, *Bigge* is the singular authority for an "irreparable error," and its language has only been invoked three times in the 70 years since *Bigge* was decided, and just once in a majority opinion of this Court. *People v Gibbs,* 483 Mich 925 (2009) (KELLY, C.J., dissenting); *People v Robinson*, 386 Mich 551, 564 (1972); *People v Christensen*, 64 Mich App 23, 36 (1975) (KAUFMAN, J, dissenting). To give this language broad effect, and to preclude a finding of waiver or harmless error for every violation of *Bigge*, would conflict with this Court's more recent criminal case-law, see, e.g., *People v Carter*, 462 Mich 206 (2000); *People v Carines*, 460 Mich 750 (1999), as well as MCL 769.26, which permits a grant of a new trial only when "the error complained of has resulted in a miscarriage of justice," and MCR 2.613, which permits a grant of a new trial only when the result is "inconsistent with substantial justice." Simply put, not every *Bigge* error is so substantively different from the multiplicity of other potential trial errors that it rises to the level of a "structural error that defies harmless error analysis," *Carines*, 460 Mich at 774, automatically results in a "miscarriage of justice," MCL 769.26, or necessarily leads to a result that is "inconsistent with substantial justice." MCR 2.613.

In sum, this Court has clarified that *Bigge*'s 'exclusionary rule' is evidentiary, not constitutional, and the "use of party opponent's statements and conduct are to be evaluated pursuant to MRE 801." *McReavy,* 436 Mich at 222. Consequently, when properly understood, not every *Bigge* error is "irreparable," such that it defies waiver or harmless error analysis, and requires automatic reversal. *Carines*, 460 Mich at 774; *Carter*, 462 Mich at 206; MCL 769.26; MCR 2.613.[2]

Here, the Court of Appeals correctly determined that defendant waived the challenged *Bigge* error by affirmatively approving the trial court's cautionary instruction and abandoning his right to move for a mistrial. *People v Redd*, unpublished opinion of the Court of Appeals, issued December 4, 2008 (Docket No. 283934), slip op at 2. Furthermore, nothing on this record suggests that the challenged error amounted to "structural error" evading a waiver analysis. See *Duncan*, 462 Mich at 51. Accordingly, I concur in the order denying leave to appeal the Court of Appeals judgment.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.

KELLY, C.J. (*dissenting*).

I oppose vacating our previous order which granted defendant's application for leave to appeal. I believe that, under the law in this state, this Court must reverse the Court of Appeals decision and reinstate the trial court's grant of a new trial.

## THE TRIAL COURT'S GRANT OF A NEW TRIAL

Defendant was charged with third-degree criminal sexual conduct[3] after a fourteen-year-old friend of his younger sister alleged that he had sexually assaulted her. Pontiac Police Detective Derrance Betts was assigned initially to investigate two separate incidents involving defendant and the complainant, one allegedly having occurred in defendant's kitchen and the other in a car.[4]

---

[2] As Chief Justice KELLY correctly observes in her dissent, this analysis of *Bigge* is not legally binding. Rather, as explained at the outset, it represents an attempt to offer guidance as to the contemporary understanding of the *Bigge* rule. The significance of this concurrence depends on the extent to which it presents a reasoned account of the relevant developments in this area of the law over the past 70 years and their impact on *Bigge*. The Chief Justice seemingly would prefer to ignore these developments and this context, preserving *Bigge* forever in its own time capsule and abjuring any analysis as to what has occurred over the past seven decades.

[3] MCL 750.520d.

Betts testified at trial that, after interviewing the victim, he sent defendant a letter requesting that he come to the police station for an interview, and defendant did so voluntarily. At the interview, Betts testified, he told defendant that he was free to leave anytime he wished and would not be arrested as a consequence.

Betts testified that defendant confirmed that he knew the complainant. Betts informed defendant that he had been accused of criminal sexual conduct but provided no details about the allegations. Betts then testified that he asked where defendant was living at the time of the alleged assaults. He said that defendant gave inconsistent answers concerning locations where he and his wife had lived. Betts testified that he was confused by the answers and wanted to obtain a better timeline from defendant. Defendant responded to the request by saying that it was not his fault that Betts was confused.

At that point, Betts testified, defendant became upset, said he was done, and stormed out of the interview. Betts also indicated that he had been unable to question defendant about the kitchen incident, but that defendant never denied any allegations of sexual misconduct. The Court of Appeals described portions of the disputed testimony:

> Betts testified that he "just brought up about the criminal sexual conduct against [the complainant]" and that defendant "never denied it. He – he just – he just sat there, and . . . he made a comment about the back of the car." Betts stated that he advised defendant of the allegations of something occurring on the kitchen floor, and defendant "never denied it." Betts later explained that he "told [defendant] that he was being accused of a criminal sexual conduct. I don't believe I came right out and asked him did he do it, 'cause he never did respond to a question."[5]

The trial transcript also indicates that Betts testified about defendant's act of leaving the interview:

> *Betts*: I needed to talk to him a bit more, to get some more information. Because all of the information he threw at me about Tennessee, I—I explained to him that I was confused and I needed to talk to him a bit more, to kind of—to help weed it out a little bit. And, that's when he—he became upset and walked out, and stormed out of the

[4] The defendant was charged with only one count of CSC on the basis of the incident in the kitchen.

[5] *People v Redd*, unpublished opinion of the Court of Appeals, issued December 4, 2008 (Docket No. 283934).

interview room. I didn't have a chance to ask him any more questions 'cause he was free to go.

When defense counsel objected to this line of questioning, the trial court instructed the jury that someone being interviewed by the police has an absolute right to leave the interview. However, on cross-examination, Detective Betts again discussed defendant's failure to deny the allegations and emphasized that defendant chose to leave the interview, stating: "I gave [defendant] an opportunity to talk to me. . . about it . . . and he stormed out of the interview." Defense counsel responded, "Right, but there's nothing wrong with that. . . and don't try to make the jurors think that there is something wrong with that." Again, Betts insisted: "I figured I'd give him an opportunity to tell his side of the story. . . . And he stormed out, so—."

At the end of proofs, the trial court gave the jury a second cautionary instruction that reiterated that defendant had an absolute right not to testify and not to be interviewed. The jury found defendant guilty of third-degree criminal sexual conduct, as charged.

Defendant moved for a new trial, arguing that Detective Betts had improperly commented about his silence during the interview and about his departure, and that the curative instruction was not sufficient. The prosecutor argued that there was no error and, even if there had been error, it was expressly waived once the curative instruction was administered and accepted by defense counsel. The trial court held a hearing, recounted much of Betts's testimony, and found it was "clearly prejudicial" to defendant and constituted "irreparable error." Therefore, the court granted defendant a new trial.

On appeal by the prosecution, the Court of Appeals reversed the trial court's order for a new trial.[6] It concluded that no error had occurred because "[t]here is no indication that Betts made a 'positive statement or declaration' to which defendant's silence might be construed as an admission of truth."[7] Alternately, the panel determined that, even if an error occurred, defense counsel waived it by acquiescing in the trial court's curative instruction.

We granted leave to appeal.[8]

THE EXCLUSIONARY RULE OF *BIGGE*

---

[6] *Id.*

[7] *Id.*, slip op at 3.

[8] *People v Redd*, 483 Mich 1024 (2009).

The disputed testimony is the detective's discussion of defendant's act of leaving the interview and defendant's unresponsiveness during the interview. In *People v Bigge*,[9] this Court explained that a defendant's silence in the face of a third-party accusation cannot be used as evidence of the defendant's guilt. The court explained:

> There can be no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of a defendant. Defendant, if he heard the statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his guilt.[10]

Thus, the exclusionary rule of *Bigge* precludes testimony concerning a defendant's silence in the face of an allegation because it characterizes such silence as an adoptive admission of guilt.

Detective Betts discussed defendant's failure to deny the allegations against him at least four times in the course of his testimony. Betts also discussed giving defendant "an opportunity to tell his side of the story," but that rather than doing so, defendant "stormed out."

*Bigge* leads me to conclude that the portions of Betts's testimony referencing defendant's failure to deny the criminal sexual conduct allegations were inadmissible. Betts testified repeatedly that defendant never denied the allegations. Betts frequently characterized the interview as defendant's "opportunity to tell his side of the story" and described how defendant "stormed out" of the interview.

This testimony was introduced solely as substantive evidence of defendant's guilt. There was no significance to defendant's failure to deny the allegations of criminal sexual conduct except to show that defendant was guilty of the alleged crimes. Moreover, characterizing the interview as defendant's "opportunity to tell his side of the story" was improper. Its only usefulness was to get the jury to infer that defendant should have spoken up and denied the accusations; hence, his failure to do so must have meant that he was guilty. Because Detective Betts's testimony violated the rule against tacit admissions originating in *Bigge*, the trial court did not abuse its discretion in granting a new trial.

I also cannot accept the Court of Appeals conclusion that there was no *Bigge* error on the theory that Betts made no "positive statement or declaration." Betts's testimony

---

[9] *People v Bigge*, 288 Mich 417 (1939).

[10] *Id.* at 420.

demonstrates that he made an assertion against defendant. He asserted that defendant was accused of a crime and invited him to admit or deny it.

Betts sent defendant a letter requesting that he come to the police station and outlining the allegations against him. Moreover, Betts testified that, during the interview, he "came forth" and told defendant, "this is the reason why you're here: You're accused of . . . criminal sexual conduct." He testified that defendant "[n]ever denied any allegations about sexual conduct."

Betts's own words undermine the Court of Appeals conclusion that he made no assertion that defendant could tacitly adopt as an admission of guilt. If Betts never made a specific assertion that defendant could tacitly adopt, then there were no "allegations about sexual conduct" for defendant to deny.

Contrary to the prosecution's argument, a *Bigge* error cannot be waived. Although "[i]t is presumed that waiver is available in 'a broad array of constitutional and statutory provisions,'"[11] a *Bigge* error is not so easily discounted. In *Bigge*, this Court strongly condemned the use of tacit admissions because of their highly prejudicial effect:

> The statement was inexcusable, wholly without warrant of law, planted irremovable impression, and rendered defendant a victim of the error. The prosecutor, by such statement of intended proof of defendant's guilt brought an effect so probable, so inadmissible and so prejudicial as to constitute irreparable error.[12]

While this Court has limited or distinguished *Bigge* in several cases,[13] we have never retreated from the conclusion that a *Bigge* error is an "irreparable error" requiring reversal.[14]

---

[11] *People v Carter*, 462 Mich 206, 217-218; 612 NW2d 144 (2000), quoting *New York v Hill*, 528 US 110, 120; 120 S Ct 659; 145 L Ed 2d 560 (2000).

[12] *Bigge*, 288 Mich at 421.

[13] *People v Hackett*, 460 Mich 202, 204; 596 NW2d 107 (1999); *People v McReavy*, 436 Mich 197 (1990).

[14] *Bigge*'s "irreparable error" analysis has never been rejected by this Court. Justice MARKMAN's concurring statement opines that our decisions, coupled with intervening developments in United States Supreme Court jurisprudence, have eroded the holding in *Bigge*. He also observes that to preclude a finding of waiver or harmless error for every *Bigge* violation would contravene our recent criminal case law.

However, the fact remains that *Bigge*'s "irreparable error" language, sparsely cited as it may be, *ante* at __, is legally binding. Justice MARKMAN's concurrence is not. Nor

Because I conclude that under *Bigge*, an "irreparable error" that could not be waived occurred in this case, I would reinstate the trial court's order granting defendant a new trial. However, even without those conclusions, I would find that the trial court did not abuse its discretion in granting a new trial to defendant. This case demonstrates the wisdom underlying the abuse of discretion standard, especially as it pertains to appellate review of a decision to grant a new trial. That rationale is "soundly rooted in the proposition that '[t]he judge was "there" we were not.'"[15]

It is clear from the trial judge's citations to Betts's testimony that he did not exercise his discretion lightly when granting a new trial. He noted that reading the testimony on paper would not provide the reader with a complete understanding of Betts's testimony. He went so far as to state:

> [t]he Court invites the Court of Appeals to look at the raw video data. It's very important that they get the sense and feel of what was going on in that hour period of time . . . and it's just so desperately clear on the facts if you'll read [sic] the video and . . . in print, it's not the same thing, it's just not the same thing, so.

We should not overlook the gravity of the judge's concern about Betts's testimony. Given the deference we afford to trial courts on the decision to grant a new trial, we should not find an abuse of discretion here. MCL 770.1 and MCR 6.431(B) employ a subjective test affording trial courts wide latitude in granting a defendant a new trial.[16] It is unmistakable from the trial court's recountal of Betts's testimony that he viewed the verdict as a miscarriage of justice. Therefore, the trial court's decision to grant a new trial does not fall outside the range of principled outcomes.

---

does this Court's order denying leave to appeal provide any basis for ignoring *Bigge*. Because *Bigge* remains good law until overruled, this Court is bound to honor its holding and reverse the judgment of the Court of Appeals.

[15] *People v Lemmon*, 456 Mich 625, 638; 576 NW2d 129 (1998), quoting *Alder v Flint City Coach Lines Inc,* 364 Mich 29, 39; 110 NW2d 606 (1961).

[16] MCL 770.1 gives a trial court the discretion to grant a new trial in criminal cases "for any cause for which by law a new trial may be granted, *or when it appears to the court that justice has not been done*." (Emphasis added); MCR 6.431(B) similarly allows a court to order a new trial "on any ground that would support appellate reversal of the conviction *or because it believes that the verdict has resulted in a miscarriage of justice*." (Emphasis added).

CONCLUSION

The admission of Detective Betts's testimony regarding defendant's silence violated the rule against tacit admissions that we pronounced in *People v Bigge*. A *Bigge* error cannot be waived because the prejudicial effect of admitting such evidence is so high that it constitutes irreparable error. The trial judge did not abuse his discretion by granting defendant a new trial because that decision was not outside the range of principled outcomes. Therefore, I would reverse the decision of the Court of Appeals and reinstate the grant of a new trial.

CAVANAGH and HATHAWAY, JJ., join the statement of KELLY, C.J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 11, 2010

0608

Clerk