## PEOPLE v THORNTON

1. CRIMINAL LAW—ERROR—FALSE TESTIMONY—DISCOVERY.

Error occurs in a criminal trial when (1) the prosecution knowingly presents false testimony, or (2) the prosecution refuses pertinent and specific defense requests for discovery after learning that a prosecution witness gave false testimony on a material point at the preliminary examination.

2. CRIMINAL LAW—EVIDENCE—DISCOVERY—FUNDAMENTAL FAIRNESS.

Generally, questions of whether discovery should be available to a criminal defendant should be determined according to whether fundamental fairness to the defendant in preparing his defense requires that he have access to the information.

3. WITNESSES—CRIMINAL LAW—TESTIMONY OF WITNESS—MATERIAL CHANGE IN TESTIFYING—DISCOVERY.

Changes in a prosecution witness's testimony between that given in a preliminary examination and that given at trial were material where the changes in the testimony would affect a jury's perception of how and why a shooting incident occurred and where the jury's knowledge that the witness had lied in prior testimony would affect his credibility; refusal of the trial judge to allow the defendant discovery of the details of the witness's changes in testimony, so that the defense did not know which of the witness's stories it would be called upon to attack at trial, was prejudicial and therefore reversible error.

4. WITNESSES—CRIMINAL LAW—INDIGENT DEFENDANT—SUBPOENA OF WITNESSES—JUDGE'S DISCRETION—STATUTES.

An indigent criminal defendant may be entitled to the subpoena and transportation of witnesses in the defendant's behalf at county expense; he must show to the satisfaction of the judge that he cannot safely proceed to trial without the proposed

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 224, 228.
[2] 23 Am Jur 2d, Depositions and Discovery §§ 307–314.
[3] (No Reference)
[4] 21 Am Jur 2d, Criminal Law § 348.
[5] 75 Am Jur 2d, Trial §§ 760, 761.

witnesses, and rulings on such requests are expressly left to the discretion of the trial court (MCLA 775.15; MSA 28.1252).

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—INFERENCES—PRESUMP-
TIONS.

A trial court may instruct a jury that they may draw an infer-
ence from certain facts but should not give instructions which
create presumptions in favor of the prosecution.

Appeal from Oakland, Robert L. Templin, J. Submitted December 8, 1977, at Lansing. (Docket No. 30374.) Decided January 23, 1978.

James Thornton was convicted of first-degree murder. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assist-ant Appellate Counsel, for the people.

James S. Thornton, *in propria persona.*

Before: R. B. BURNS, P. J., and ALLEN and R. M. MAHER, JJ.

ALLEN, J. Defendant was convicted of first-de-gree murder by an Oakland County jury on Au-gust 24, 1975. MCLA 750.316; MSA 28.548. He was later sentenced to life in prison as required by the statute, and appeals as of right.

The killing occurred on May 11, 1974. On that day, Edward Rasen and William Day went to defendant's home in Farmington Hills. Their en-counter resulted in William Day's death and left Edward Rasen severely wounded. The exact details of what occurred are, of course, disputed.

Rasen was the main prosecution witness. Testi-mony at trial showed that Rasen and the defend-

ant were members of a nationwide marijuana syndicate. The shooting incident which led to these charges resulted from a dispute over proceeds from a syndicate shipment and defendant's refusal to return a truck to Rasen.

When Rasen testified at the preliminary examination, in May of 1974, he lied about his reasons for being in the Detroit area and did not disclose the true nature of his argument with the defendant. Specifically, he said nothing about the marijuana syndicate in which both he and the defendant were principals. The prosecution knew, even before the preliminary examination, that major portions of Rasen's story were fabricated. For example, they knew that he had flown into Detroit from California on the day before the shooting. At the preliminary examination, Rasen repeatedly testified that he had hitch-hiked from California and had arrived on the morning of the day the shooting occurred.

Rasen and his attorneys were continuously involved in negotiations with Federal and state prosecuting authorities. As part of an immunity bargain, Rasen eventually disclosed to the Michigan authorities the full details of his involvement with the defendant. These details were known to the prosecution not later than January of 1975. Despite repeated defense requests for discovery and specific inquiries as to whether Rasen had abandoned the testimony he gave at the preliminary examination, the prosecution refused to confirm that the preliminary examination testimony had been false. Consequently, the defense did not know how Rasen would testify until he actually took the stand at trial. Once it became apparent that his story had changed, the defense impeached him with excerpts from his preliminary examination testimony.

On the first day of the trial, the defendant asked the trial judge to authorize subpoena and witness fees for two out-of-state witnesses. The trial judge first questioned the defendant's indigency since he was represented by retained counsel. However, the judge later seemed to concede that the defendant was indigent but nevertheless ruled that he would not authorize the expenditure of county funds unless the defense first revealed the names of the proposed witnesses and the nature of their testimony. The defendant's attorney refused to do this in open court, but he did offer to submit affidavits for *in camera* inspection by the court. The judge rejected that offer and the defense refused to disclose the information in open court. One of the proposed witnesses was an orthopedic surgeon with ballistics expertise. The other witness was acquainted with Rasen from California and would have testified as an impeachment witness to attack Rasen's credibility. Because of the adverse rulings, neither witness testified for the defense.

The defendant has raised 23 separate issues on appeal. We find one which clearly requires reversal. Two others deserve some comment. The remainder are without merit.

We reverse the defendant's conviction because we are convinced that the prosecution knowingly presented false testimony at the preliminary examination. The extent of the prosecution's knowledge at that point in time might be debated, but it is clear that the authorities knew that some portions of Rasen's testimony were false.[1]

---

[1] The prosecutor at the preliminary examination did question Rasen about his reasons for coming to Detroit and his mode of travel. Thus, it might be argued that an effort to bring out the truth was made. However, the questions also evidenced the prosecution's doubts about their own witness's veracity. These doubts were never shared with the defense.

Without more, there would be no reversible error. However, the situation changed when the immunity negotiations led to the change in Rasen's story. At that point, the prosecution knew beyond any doubt that Rasen had lied at the preliminary examination. It also knew that he would tell a significantly different story at trial. But this information was withheld from the defense despite specific requests.

There are signs that we may be approaching a rule of complete discovery in criminal cases—at least discovery of materials held by the prosecution. See *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933), *People v Maranian,* 359 Mich 361; 102 NW2d 568 (1960), *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), *People v Aldridge,* 47 Mich App 639; 209 NW2d 796 (1973), and *People v Walton,* 71 Mich App 478; 247 NW2d 378 (1976).

The present case does not require that we further expand the frontiers of criminal discovery. Based on existing authorities, we are convinced that error occurs when (1) the prosecution knowingly presents false testimony or (2) the prosecution refuses pertinent and specific defense requests for discovery after learning that a prosecution witness gave false testimony on a material point at the preliminary examination.

"The legal concept of a criminal trial has changed considerably in modern times. It is seen less as an arena where 2 lawyer gladiators duel with the accused's fate hanging on the outcome and more as an inquiry primarily directed toward the fair ascertainment of truth." *People v Johnson,* 356 Mich 619, 621; 97 NW2d 739 (1959).

The arguments of the prosecutor in the present

case suggest an outdated adherence to the gladiator concept.

In *People v Walton, supra,* the Court cited *People v Aldridge, supra,* for the general rule that questions of criminal discovery should be determined according to whether fundamental fairness to the defendant, in preparing his defense, requires that he have access to the information. That test is met in the present case. The trial judge ruled and the prosecutor argued against disclosure on grounds that the changes in Rasen's testimony were not material. By this they mean that Rasen's version of the shooting incident remained unchanged. The major changes in Rasen's testimony concerned his description of his trip from California to Detroit and his admission of his involvement in the marijuana syndicate. The theoretical basis for the prosecutor's argument is sound. If the testimony changes are not material, nondisclosure might not be considered error or, at least, the error would be harmless. But we reject the contention that the changes in the present case are not material. Rasen's admission of his involvement in the marijuana operation would materially affect a jury's perception of how and why the shooting incident occurred. Further, jury knowledge of Rasen's involvement and the fact that he lied about that involvement in prior testimony would adversely affect his credibility as a witness. Therefore, we believe that the changes were material even though Rasen's testimony about the shooting incident itself was consistent.

Alternatively, the prosecution argues that the defendant was not prejudiced because his attorney was able to impeach Rasen at trial with evidence of his prior inconsistent testimony. We concede that defense counsel was effective in this regard,

but his effectiveness was unavoidably limited by his uncertainty as to which story Rasen would present. This uncertainty limited opportunities for pre-trial investigation and required the defense to expend time and effort preparing to attack both of Rasen's stories. Therefore, the nondisclosure was prejudicial even though the defense had an opportunity for cross-examination.

For the reasons stated, the defendant's conviction is reversed. Given the possibility of another trial, we will briefly comment on two other issues raised on appeal.

The defendant's efforts to subpoena and transport two out-of-state witnesses at county expense are detailed earlier in this opinion. The trial judge refused to consider that request unless the defendant would first disclose in open court the names of the proposed witnesses and the substance of their testimony. Existing authorities support that ruling. MCLA 775.15; MSA 28.1252 requires a defendant to show "to the satisfaction of the judge presiding over the court wherein such trial is to be had * * * [that] he cannot safely proceed to a trial [without the proposed witness]". Rulings on such motions are expressly left to the discretion of the trial court. The cited statute is limited to witnesses "within the jurisdiction of the court". But there is no reason to believe that a different rule should obtain where a defendant seeks the production of witnesses who live outside Michigan. Given the statute, it is apparent that the trial judge ruled correctly in the present case. See also *People v Thomas,* 1 Mich App 118; 134 NW2d 352 (1965).

However, there is some reason to doubt the continuing validity of the statute. The Federal Rules of Criminal Procedure, Rule 17(b), formerly

contained a provision very similar to the Michigan statute as interpreted by the judge in this case. The rule was amended in 1966 to allow defendants to apply for witness fees *ex parte, i.e.,* without revealing names and testimony to the prosecution. Cases commenting on the amendment indicate that the rule was changed because of the disturbing equal protection problem evident on the face of a rule which would require indigents to disclose their defense theory to the prosecution while not requiring similar disclosure from defendants who are able to pay their own fees. See *United States v Meriwether,* 486 F2d 498 (CA 5, 1973), *United States v Barker,* 553 F2d 1013 (CA 6, 1977). For a general discussion of the Federal rule and the impetus behind the 1966 changes, see 1 Wright, Federal Practice and Procedure (1969), Chapter 5, § 272, pp 539–544. These constitutional problems could be avoided on retrial in the present case if the trial judge accepts the defendant's offer to submit the names of the witnesses and outlines of their testimony for *in camera* inspection. This procedure would be similar to the *ex parte* practice now followed in the Federal courts.

Defendant also contends that some of the instructions on intent were reversibly erroneous because they established presumptions in the prosecution's favor and placed the burden of proof on the defendant to overcome those presumptions. These arguments have been rendered moot by our reversal of the defendant's conviction. On retrial, the court would do well to avoid similar instructions. It is appropriate to tell the jury that they may draw an inference from certain facts. However, instructions which create presumptions in favor of the prosecution are disapproved. See *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974),

*People v Wright,* 78 Mich App 246; 259 NW2d 443 (1977).

## Conclusion

We express no opinion as to whether the instruction on presumptions or the ruling on the witness fees question would require reversal. Our comments on those issues are intended solely for the guidance of the parties and the trial court on retrial. The defendant's conviction is reversed because of the refusal to permit discovery of the complaining witness's perjury.

Reversed.