PEOPLE v BRYAN

Docket No. 77-3006. Submitted April 11, 1979, at Lansing.—Decided
    September 5, 1979. Leave to appeal applied for.

Thomas J. Bryan was convicted of assault with intent to commit
    murder and of assault with intent to rob while armed, Bay
    Circuit Court, Leon R. Dardas, J. Defendant appeals, alleging
    several errors. *Held:*

1. The prosecutor's handling of statements made by the
    defendant was improper. The prosecutor told defense counsel
    that the defendant had made no statement, thereby forestalling
    the holding of a *Walker* hearing until the middle of the trial,
    he withheld the fact of a subsequent statement, and he made
    use of the defendant's statements after stating that no such
    statements would be used. However, the use of the statements
    does not require reversal because the defendant was not preju-
    diced by such use. The evidence against the defendant was
    overwhelming and the statements in question were insignifi-
    cant in leading to his conviction.

2. The misspelling of an endorsed witness's name and the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 896.
[2] 5 Am Jur 2d, Appeal and Error §§ 776, 778.
[3] 5 Am Jur 2d, Appeal and Error § 803.
[4] 29 Am Jur 2d, Evidence § 585.
[5] 41 Am Jur 2d, Indictments and Informations § 128.
[6] 5 Am Jur 2d, Appeal and Error §§ 797, 798.
[7] 4 Am Jur 2d, Appeal and Error § 541.
    Propriety and effect of prosecuting attorney's argument to jury
        indicating his belief or knowledge as to guilt of accused. 50
        ALR2d 766.
[8] 81 Am Jur 2d, Witnesses § 481.
[9] 81 Am Jur 2d, Witnesses § 560.
    Preventing or limiting cross-examination of prosecution's witness as
        to his motive for testifying. 62 ALR2d 610.
[10] 75 Am Jur 2d, Trial § 61.                    .
[11] 6 Am Jur 2d, Assault and Battery § 65.
[12] 75 Am Jur 2d, Trial § 876.
    Effect of failure or refusal of court, in robbery prosecution, to
        instruct on assault and battery. 58 ALR2d 808.

misstatement of the witness's address did not result in prejudice to the defendant.

3. Failure of the prosecutor to reveal a witness's change of testimony before trial did not result in prejudice to the defendant. The change in story did not relate to the defendant's role in the crime.

4. Any possible prejudice resulting from the prosecutor's reference to the victim as the "body" was eliminated by an instruction to the jury.

5. No prosecutorial error occurred where a witness answered a question in a nonresponsive manner, relating matters which otherwise might be deemed inadmissible.

6. A portion of the prosecutor's closing argument which raised issues broader than the guilt or innocence of the defendant was improper. However, the argument was terminated at the outset by a defense objection, and no curative instruction was requested. The defendant suffered no prejudice from the improper argument.

7. A prosecutor is permitted to impeach a res gestae witness who is not an accomplice.

8. The defendant's counsel was properly permitted to bring out the possibility that a prosecution witness was testifying favorably to the prosecution in exchange for leniency by questioning the witness as to the existence of charges pending against the witness.

9. The trial judge was incorrect in asserting that his order sequestering the witnesses could not also provide that the witnesses not discuss their testimony. However, the defendant has shown no prejudice resulting from this error.

10. Preliminary examination testimony of the complainant, who had died before the time of trial, was properly admitted into evidence.

11. The trial court's instructions on intoxication, when read as a whole, were proper.

12. The convictions for assault with intent to commit murder and for assault with intent to rob while armed are not for the "same offense" and do not violate the prohibition against double jeopardy.

13. The trial court improperly refused the defendant's request for an instruction to the jury on attempted armed robbery, which is a necessarily lesser-included offense of assault with intent to rob while armed. Therefore, the defendant's conviction for assault with intent to rob while armed should be vacated and remanded for entry of a judgment of conviction for

attempted armed robbery, or, if the prosecutor so desires, for retrial on the greater offense.

Conviction for assault with intent to commit murder is affirmed. Conviction for assault with intent to rob while armed is vacated and the case remanded with instructions.

1. CRIMINAL LAW — PROSECUTOR'S MISCONDUCT — PREJUDICE — APPEAL AND ERROR.

There must be a showing of prejudice to a defendant in order for a prosecutor's misconduct to be such that a reversal of the defendant's conviction is required.

2. APPEAL AND ERROR — CRIMINAL LAW — PREJUDICE — ERROR — HARMLESS ERROR.

The Court of Appeals must make two inquiries when determining whether a defendant has been prejudiced by an error: first, whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless; second, if not so basic, whether the error was harmless beyond a reasonable doubt.

3. CRIMINAL LAW — ERROR — HARMLESS ERROR.

Error in a criminal trial is not harmless if, in a trial free of the error complained of, it is reasonably possible that even one juror might have voted to acquit the defendant.

4. CRIMINAL LAW — EVIDENCE — DEFENDANT'S STATEMENT — VOLUN-TARINESS — IMPEACHMENT.

There is no requirement that a *Walker* hearing be held to determine the voluntariness of a defendant's statement where the statement is used only for impeachment of the defendant upon cross-examination.

5. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — EN-DORSED WITNESSES.

The unintentional misspelling of a res gestae witness's name and the misstatement of that witness's address on an information did not prejudice a defendant where defense counsel was given an opportunity to interview the witness before he testified at trial.

6. CRIMINAL LAW — EVIDENCE — WITNESSES — CHANGE IN TESTI-MONY — PREJUDICE.

A defendant was not prejudiced by the prosecutor's failure to reveal to the defense a change in the testimony of a prosecu-tion witness prior to trial where no requests for the new testimony were made and where the change in story did not

relate to the defendant's role in the offense charged and is not exculpatory.

7. CRIMINAL LAW — ARGUMENTS BY PROSECUTOR — PREJUDICE.

A closing argument by a prosecutor which raises issues broader than the guilt or innocence of the accused is viewed with disfavor; however, such an argument was not so prejudicial as to require reversal of a defendant's conviction where the argument was terminated at the outset by a defense objection which was sustained and where a curative instruction was not requested.

8. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — IMPEACHMENT — ACCOMPLICES.

A prosecutor is permitted, on direct examination, to impeach a res gestae witness who was not an accomplice of the defendant who is on trial.

9. WITNESSES — CRIMINAL LAW — PROSECUTION WITNESSES — CHARGES PENDING AGAINST WITNESS.

A defendant's counsel is entitled to question a prosecution witness as to the existence of charges pending against that witness in order to bring out the possibility that the witness is testifying favorably to the prosecution in return for leniency with regard to those charges; however, the number of pending charges is irrelevant to the inquiry as to the possibility of leniency.

10. WITNESSES — SEQUESTRATION OF WITNESSES — DISCUSSION OF TESTIMONY.

A trial court's order sequestering witnesses may also provide that the sequestered witnesses not discuss their testimony.

11. CRIMINAL LAW — DOUBLE JEOPARDY — ASSAULT WITH INTENT TO MURDER — ASSAULT WITH INTENT TO ROB.

Two crimes do not constitute the same offense for purposes of double jeopardy analysis if each requires proof of an additional fact which the other does not; convictions for assault with intent to commit murder and assault with intent to rob while armed, arising from the same criminal transaction, do not violate the prohibition against double jeopardy.

12. ROBBERY — ASSAULT — LESSER-INCLUDED OFFENSES — INSTRUCTIONS TO JURY.

Attempted armed robbery is a necessarily lesser-included offense of assault with intent to rob while armed; therefore, a trial court's refusal to instruct a jury on attempted armed robbery

in a trial for assault with intent to rob while armed, where the defendant requested such an instruction, requires that the defendant's conviction of the charged offense be vacated and a conviction of the lesser offense be entered.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *Thomas J. Rasdale,* Assistant Prosecuting Attorney, for the people.

*Lynn Chard,* Assistant State Appellate Defender, for defendant on appeal.

Before: V. J. BRENNAN, P.J., and BRONSON and CYNAR, JJ.

CYNAR, J. Following a jury trial in early May of 1977, defendant was convicted of assault with intent to commit murder, MCL 750.83; MSA 28.278, and assault with intent to rob while armed, MCL 750.89; MSA 28.284. On June 13, 1977, he was sentenced to concurrent terms of 25 to 40 years imprisonment on each count. Defendant now appeals as of right.

The charges against defendant arose out of an incident in Bay City on the evening of April 7, 1976, in which the complainant, Albin Trojanowicz, was struck on the head with a hammer and stabbed with a knife. Defendant and two others, Brian Miller and Rick Miller, were arrested and bound over on assault charges as a result of this incident. Defendant was tried separately from the other defendants.

At the trial Donald Elder testified that he was drinking with defendant and the Millers on the afternoon of the offense. At one point defendant suggested that he and Elder "go and raise some hell and get in trouble", but Elder declined this offer.

Diane Blair testified that she was riding in a car with defendant and the Millers on the evening of the offense. Defendant was in possession of a knife at that time. When the occupants of the car noticed a man who appeared drunk walking down the street, either defendant or Brian Miller suggested that they "roll" him. Defendant and Brian Miller left the car, the latter carrying a hammer, and Rick Miller drove to his mother's house. The witness further testified that shortly thereafter defendant and Brian Miller appeared, both with bloody hands. At that time defendant said that they had killed a man and Brian Miller admitted striking someone with a hammer. Defendant and Brian Miller then washed and concealed the hammer. Ilene Miller, the mother of the two codefendants Miller, testified that she noted blood on defendant's hand and that she helped defendant dispose of a knife and a hat he had been wearing.

The complainant, Albin Trojanowicz, died prior to trial from causes not related to the assault and his preliminary examination testimony was read into the record at trial. He testified that he was walking home that evening when he was attacked by what he thought were two men. He stated that he was hit on the head and struck in the stomach. He testified that he remembered blood splashing and then recalled nothing until he awoke in the hospital. Medical testimony established that the complainant had been struck on the head and stabbed on the side. He had bled profusely and would have died had he not been treated.

Unknown to the occupants of the car that evening, an undercover operation in an unrelated matter, consisting of several officers, had spotted the vehicle. They saw two men leave the vehicle but did not witness the assault. When a passerby

discovered the complainant and contacted the police, a bulletin was put out on the car. Twenty-five minutes later the vehicle was stopped. At the time defendant was its only occupant. The arresting officers noticed blood near the driver's side of the car and on defendant's shoes. Evidence at trial showed that this blood type matched the blood type of the victim. Both the knife and the hammer were retrieved and admitted as exhibits at trial.

Defendant's defense was that of intoxication. He claimed he had consumed 25 to 30 beers and a pint of schnapps on the day in question and that he did not intend to commit the crimes. He did admit striking the victim in the chest, allegedly in response to something he had said, but denied possessing a knife at that time. The arresting officers testified that defendant did not appear intoxicated to them.

Defendant also introduced evidence to explain the blood found in the car and on his shoes. Defendant's brother, Mark Bryan, testified that on April 4, 1976, he had been in a fight and knocked unconscious. When he awoke defendant was holding his head. Medical records indicated that the blood found on the tennis shoes, Levi's, and on the automobile at the time of defendant's arrest matched the blood type of defendant's brother.

## I. *Use of defendant's statements.*

Defendant initially alleges that the prosecution denied defendant a fair trial by its use of statements made by defendant shortly after arrest.

At trial Sergeant Edward LaPlant, one of the arresting officers, testified that he asked defendant what had happened shortly after his arrest. Defense counsel objected before the officer could state defendant's response to the question. He requested a mistrial, claiming that the prosecutor had told

him that defendant had made no statements. In response the prosecutor agreed that he had said there were no statements by defendant. However, he added that he had never said there were no "remarks" made by defendant at the time of his arrest.

After considerable argument by counsel, defendant's motion for a mistrial was denied. The trial judge did order a *Walker*[1] hearing to determine the voluntariness of the alleged statements. In the course of this hearing Sergeant LaPlant testified that defendant was advised of his *Miranda*[2] rights at the time of his arrest. He testified that immediately thereafter defendant denied having done anything wrong. He further stated that later on he talked to defendant at the police station. However, at that point the witness was cut off by the prosecutor who stated:

"I have to hold it here for a second. All I asked him was what did he say at the scene when he was arrested, and so that's where we are at this point. Anyhow, there was subsequent questioning at the station, but we hadn't gotten to that bridge yet."

Subsequently, defense counsel waived the production of another officer who was present at the scene of the arrest. The trial judge ruled that the statements made by defendant were voluntary. The prosecutor then indicated that he intended to present additional evidence of statements made to another officer, Sergeant Lochinski. This led to an exchange between counsel and the trial judge as to the need for an additional *Walker* hearing. At one

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

point defense counsel accused the prosecution of trickery and asserted that all statements should be disclosed at one time. In response the following exchange occurred:

"PROSECUTOR: In fact, your Honor, I think that Mr. Caprathe is making a mountain out of a mole hill, I'm sufficiently satisfied with the evidence at this time. At this time, I'll abjure the use of any statements. I believe they're admissible. It's not worth the hassle.

"THE COURT: I'm concerned with the statement you made prior to this. You said in view of the fact they do not want them presented you will not present the exculpatory statements.

"PROSECUTOR: Yes, I'll leave the whole area alone. No statements from the defendant.

"THE COURT: All right. That eliminates all problems, doesn't it?'"

Later in the trial, defendant chose to testify in his own behalf. In the course of cross-examination the following exchange occurred:

"Q What did you first tell the police, by the way, when they arrested you?

"A I told them I didn't know nothing about it.

"Q Told them you didn't know nothing about it, right?

"A Yes.

"Q And later on did you change your story a little bit?

"A That's just it. I can't remember what happened at the police station.

"Q Did you tell the police the story that you had given your car to Brian Miller and that he had dropped you off at the house, and that Brian and Ricky and Diane had driven somewhere? Did you tell them that story?'"

At this point defense counsel objected on the

ground that no *Walker* hearing had been held to determine the voluntariness of this latter statement. The objection was overruled and the cross-examination continued as follows:

"Q Did you make that statement to the police?
"A Not that I know of.
"Q But did you give them that story?
"A Not that I know of.
"Q Did you tell them Brian Miller had come back to the house with Ricky and Diane and stopped the car there and told you, 'Hey, things look bad. You better get out of here.'
"A Would you repeat that?
"Q Did you tell the police that they had dropped you off at the house, they had come back a short time later, Brian borrowed your car from you, said, 'I need to use it for a while.' He came back a short while later and said, 'Hey, things look really bad. You better get out of here.'
"A No, I didn't.
"Q You didn't make that statement to them, or you don't remember?
"A I don't remember it, no."

It is clear from this record that the prosecutor handled this case in a less than exemplary manner. By telling defense counsel that defendant had made no "statement" at the time of his arrest, he forestalled the holding of a *Walker* hearing until the middle of trial, an obviously inconvenient time for such a hearing. Moreover, his explanation for his prior comment, differentiating "statements" from "remarks", is not convincing.

We further find fault with his tactic of withholding at the ordered *Walker* hearing the fact of defendant's subsequent statement. It should have been obvious to him at this point that the trial judge would order a *Walker* hearing for *any* state-

ment made by defendant. Nor was it proper for the prosecutor to make use of defendant's statements after stating that no such statements would be used. We find unbelievable the prosecutor's claim that this statement was meant only to apply to his case-in-chief. Under different circumstances, such a tactic could surely constitute reversible error.

However, in order for such conduct to warrant reversal, there must be a showing of prejudice. *People v Robinson,* 386 Mich 551, 562-563; 194 NW2d 709 (1972). In determining whether prejudice has occurred we must first determine whether the error complained of was "so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless". *People v Robinson, supra,* 563, *People v Christensen,* 64 Mich App 23, 32-33; 235 NW2d 50 (1975). Although we are strongly critical of the prosecutor's conduct with regard to defendant's statements we do not believe it requires reversal.

Having so concluded we must then determine if in the present case the error was harmless beyond a reasonable doubt. *People v Robinson, supra,* 563, *People v Christensen, supra,* 33. In applying this test, we must determine if, in a trial free of error, it is reasonably possible that even one juror might have voted to acquit defendant. *People v Wilkins,* 82 Mich App 260, 272; 266 NW2d 781 (1978). Such an inquiry necessarily requires an examination of all the evidence presented at trial.

We conclude that the prosecutor's conduct in this matter did not serve to prejudice defendant. The evidence against the defendant was overwhelming and the statements in question were insignificant in leading to his conviction.

Nor did any prejudice occur from the brief at-

tempted use of the subsequent statement. This statement was exculpatory in nature. Its impact appears inconsequential. Moreover, because the statement was being used for impeachment purposes, there was no requirement that a *Walker* hearing be held to determine its voluntariness. *People v Jones,* 76 Mich App 601, 607; 257 NW2d 185 (1977).

II. *Prosecutorial misconduct.*

Defendant next argues that defendant was denied a fair trial as a result of various tactics of the prosecutor. Specifically he contends: (1) that the prosecutor failed to reveal the correct name and address of an endorsed witness until just before trial; (2) that the prosecutor failed to reveal the change of testimony of a prosecution witness; (3) that the prosecutor twice referred to the victim as "the body"; (4) that the prosecutor questioned a witness on matters previously ruled inadmissible; and (5) that the prosecutor injected issues broader than the guilt or innocence of the accused into his closing argument.

We conclude that defendant suffered no prejudice as a result of the misspelling of Donald Elder's name and misstatement of his address on the information. The error did not appear to be intentional and defense counsel was given an opportunity to interview the witness before he testified at trial. *People v Harrison,* 44 Mich App 578, 586; 205 NW2d 900 (1973).

Similarly we find no error resulting from the prosecutor's failure to reveal Diane Blair's change of testimony. At the preliminary examination her testimony was damaging to defendant, while tending to exculpate Brian Miller. However, two days before trial she told the prosecutor that she had lied at the examination as a result of pressure

from the Miller family. Unlike the situation in *People v Thornton,* 80 Mich App 746; 265 NW2d 35 (1978), no requests for the new testimony were made. Further, the change in story did not relate to defendant's role in the incident and can hardly be considered exculpatory. Under these circumstances there was no duty placed on the prosecutor to reveal the change of story prior to trial. *United States v Agurs,* 427 US 97; 96 S Ct 2392; 49 L Ed 2d 342 (1976).

The prosecutor's reference to the victim as the "body", although unnecessary, does not rise to the level of reversible error. The jury was reminded that the complainant did not die as a result of the attack. Thus, any possible prejudice resulting from this reference was eliminated.

Defendant's claim that the prosecutor persisted in questioning a witness as to matters deemed inadmissible is not borne out by the record. Initially, in the course of examining Diane Blair, the prosecutor attempted to ask her about defendant's attitude after the crime. Defense counsel's objection to this question was sustained. Subsequently, the prosecutor attempted to ask the witness to describe defendant's *conduct,* a question that would not require a conclusory answer. However, the witness answered in a nonresponsive manner, describing defendant's attitude rather than his conduct. Since the witness, not the prosecutor, was to blame, this issue is without merit.

We also conclude that the prosecution's closing argument, although improper, does not require a reversal of the convictions. During cross-examination of an expert witness offered by the defense, the prosecutor elicited testimony that 90 per cent of county jail inmates had a significant substance abuse problem. During closing argument, the pros-

ecutor addressed defendant's intoxication defense as follows:

"That's why the law in the state is that intoxication is no excuse for crime. The only concern that intoxication has in this case is was the defendant so intoxicated that he did not make the decision to attack Mr. Trojanowicz, that he did not make the decision to knife Mr. Trojanowicz. If you find that, ladies and gentlemen, you're ignoring all the evidence in this case and you are saying basically, that intoxication does excuse criminal conduct, and that the other ten percent who aren't drinking will now undoubtedly go out and develop the habit."

We agree with defendant's contention that this type of argument, raising issues broader than the guilt or innocence of the accused, has been condemned on numerous occasions by this Court. See for example *People v Gloria Williams,* 65 Mich App 753; 238 NW2d 186 (1975), *People v Meir,* 67 Mich App 534; 241 NW2d 280 (1976), and *People v Biondo,* 76 Mich App 155; 256 NW2d 60 (1977). However, in the present case the argument was terminated at the outset by a defense objection which was sustained. Although no curative instruction was given, none was requested. Under these circumstances, we do not believe the prosecution's argument was so prejudicial as to require a reversal of the convictions.

III. *Errors by the trial judge.*

Defendant also alleges that the trial judge made several errors in the course of the trial. He claims the trial judge erred: (1) by permitting the prosecutor to impeach Diane Blair on direct examination; (2) by sustaining the prosecutor's objection to questions regarding pending charges against Donald Elder; (3) by failing to instruct sequestered wit-

nesses not to discuss their testimony; (4) by permitting the prosecutor to read into the record allegedly inadmissible matter in the complainant's preliminary examination testimony; and (5) by improperly instructing the jury as to the legal effect of intoxication upon the element of specific intent.

The prosecutor's impeachment of Diane Blair was necessitated by her change in testimony from that given at the preliminary exam. We find no error in this impeachment. Since this witness was in the car prior to the assault and at the Miller house when defendant returned, she was clearly a res gestae witness. *People v Charles Williams #2,* 45 Mich App 630, 635; 207 NW2d 180 (1973). However there was no evidence linking her to the crime, mere presence being insufficient to support a conviction. *People v Burrel,* 253 Mich 321, 323; 235 NW 170 (1931). The case law is clear in stating that the prosecutor is permitted to impeach a res gestae witness who is not an accomplice. *People v White,* 401 Mich 482, 508-509; 257 NW2d 912 (1977).

We agree with defendant's contention that defense counsel was entitled to question Elder, a prosecution witness, as to the *existence* of charges then pending against him. Defense counsel was entitled to bring out the possibility that the witness was testifying favorably to the prosecution in return for leniency with regard to these charges. *People v Harrington,* 76 Mich App 118, 121; 256 NW2d 52 (1977). However, in the present case the trial judge properly limited the inquiry in this area by sustaining the prosecutor's objection to a question regarding the *number* of pending charges. The number of pending charges is clearly irrelevant when inquiring as to the possibility that promises of leniency had been made.

Nor does the trial judge's failure to instruct sequestered witnesses not to discuss their testimony require reversal. Although the trial judge was incorrect in asserting that his sequestration order could not so provide, *People v Stanley,* 71 Mich App 56, 62; 246 NW2d 418 (1976), defendant is unable to show any prejudice resulting from the absence of such an instruction.

We find no error in the admission of the complainant's preliminary examination testimony. Although the prosecutor did use leading questions at the examination, no objection was made at that time. Therefore, defendant waived consideration of this issue.

We also conclude that the intoxication instructions, when read in their entirety, *People v Parsons,* 59 Mich App 79, 83; 228 NW2d 852 (1975), properly apprised the jury that voluntary intoxication could act to negate the specific intent required for convictions of the charged offenses. It is true that the initial instruction and a subsequent instruction on this point were confusing and contradictory. However, this confusion was relieved by the final supplemental instruction on the subject, where the judge stated:

"If I gave you the impression that intoxication is not a defense to a specific intent crime, that is incorrect. Voluntary intoxication may be a defense to a specific intent crime. The questions you should ask yourself in this area are: Does the evidence presented satisfy me or create a reasonable doubt that the defendant was intoxicated? If so, was the defendant so intoxicated that he did not mean to do the act that he did, or was unaware of the probable consequences of his acts?

"The questions you must ask yourself then are these: First, did the defendant do the act? Did the defendant mean to participate in the infliction of wounds on Mr. Trojanowicz in order to kill him, or knowing that the

infliction of these wounds would create a substantial probability of his death?"

Thus, defendant's claim is without merit.

IV. *Other issues.*

Defendant raises two additional issues for our consideration.

He first claims that the two convictions violate the prohibition against double jeopardy in the instant case.

We disagree. The prohibition against double jeopardy does protect against multiple punishment as well as multiple prosecution for the same offense. However, the present situation does not involve two convictions for the "same offense". For purposes of double jeopardy analysis two crimes do not constitute the same offense if "each provision requires proof of an additional fact which the other does not". *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). It is clear in the present case that the two offenses involved herein each require a species of intent that the other does not. Since the two offenses require different specific intents, convictions for both do not violate the prohibition against double jeopardy. *People v Compian,* 38 Mich App 289, 301; 196 NW2d 353 (1972).

Defendant's final contention is that the trial judge erred in refusing his request for an instruction on attempted armed robbery.

Since our Supreme Court's opinion in *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), trial courts have been required, upon request, to instruct the jury on all necessarily lesser-included offenses. An offense is necessarily included within another when it is "impossible to commit the

greater without first having committed the lesser". *People v Ora Jones, supra,* 387.

In the present case defendant was charged with the offense of assault with intent to rob while armed. MCL 750.89; MSA 28.284. The elements of this crime consist of: (1) an assault with force and violence; (2) an intent to rob and steal; and (3) defendant being armed. See *People v Sanford,* 402 Mich 460, 474 fn 1; 265 NW2d 1 (1978). Attempted armed robbery, on the other hand, requires: (1) an attempted felonious taking of property from the person of another or in his presence; (2) by force and violence or by assault or by putting in fear; and (3) defendant being armed. *People v Sanford, supra,* 474 fn 1.

An examination of the above elements leads us to conclude that attempted armed robbery is a necessarily lesser-included offense of assault with intent to rob while armed. In every case where an assault with intent to rob while armed takes place, an attempted armed robbery will also take place. Both require that defendant be armed. Further, the assault necessary for the former offense will always provide the force and violence and overt act necessary for the attempted armed robbery.

In support of our conclusion, we note a plurality opinion of our Supreme Court has reached the same conclusion on this issue. *People v Patskan,* 387 Mich 701; 199 NW2d 458 (1972). Further, a panel of this Court, using similar analysis, has concluded that attempted rape is a necessarily lesser-included offense of assault with intent to rape. *People v Herbert Ross,* 73 Mich App 588; 252 NW2d 526 (1977).

In light of the above analysis, we are required to vacate defendant's conviction for assault with intent to rob while armed and to remand for entry

of a judgment of conviction for the offense of attempted armed robbery. The prosecutor may, at his option, retry defendant on the greater offense. *People v Jenkins,* 395 Mich 440, 443; 236 NW2d 503 (1975). Defendant's conviction for assault with intent to commit murder is affirmed.